COMMONWEALTH *vs.* MICHAEL A. BORODINE.

Middlesex.    May 4, 1976. — August 23, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide. Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Evidence,* Of state of mind, Relevancy and materiality. *Practice, Criminal,* Argument by prosecutor, Charge to jury. *Error,* Whether error harmful.

There was no error at a murder trial in denying a motion to suppress statements made to a police officer who initially and slowly questioned the defendant when called to the victim's home, putting a series of natural preliminary questions, without any Miranda warnings, which involved no aspect of coercion or of "custodial" interrogation and no answers inculpatory on their face. [3-5]

The "basement" of a home was not a "place of detention" within G. L. c. 276, § 33A, as amended through St. 1963, c. 212, and telephone rights thereunder were inapplicable to an arrested person in custody in the basement. [5]

Findings with respect to a defendant twenty-three years of age and of above average intelligence, given the Miranda warnings before making statements to police officers concerning a homicide which he explicitly denied committing, warranted a conclusion that the defendant had knowingly, freely, and intelligently waived his constitutional rights. [5-6]; testimony concerning the defendant's appearance and actions while answering police questions was admissible at his trial [6-7].

1

Commonwealth *v.* Borodine.

Statements made by a murder victim to persons other than the defendant and outside of his presence, indicating that the victim had abandoned her plans to marry the defendant and intended to terminate their relationship, were properly admitted in evidence at his trial where an inference was warranted that by word or action, or both, she had communicated her attitude to the defendant. [7-9]

Improper closing statements by the prosecutor at a murder trial pointing to clear prosecutorial error, including statements that the victim "did not have an enemy in the world," and that the defendant "has never had a shred of remorse," were put in proper perspective, and prejudice to the defendant eliminated, by the trial judge's careful instructions to the jury both in his charge and in response to valid objections during the course of the prosecutor's summation [9-10]; the defendant's other challenges to the prosecutor's closing argument did not disclose any error of law [10-12].

It was without significance that the judge's charge in a murder trial did not use the word "alibi". [12]

Lack of evidence of reasonable provocation for a murder eliminated any requirement of an instruction on voluntary manslaughter at the trial of the defendant. [12]

A correct statement of the law in the judge's charge at a murder trial that "imposition of the death penalty" was not permitted, was not ground for a valid complaint by the defendant where, although warned, he raised no timely objection thereto. [12-13]

INDICTMENT found and returned in the Superior Court on August 8, 1974.

The case was tried before *Dimond, J.*

*Howard J. Alperin* (*Barry M. Haight* with him) for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals under G. L. c. 278, §§ 33A-33G, from a conviction of murder in the first degree.

The body of the victim, a girl friend of the defendant, was found in the cellar of her Newton home one afternoon in May, 1974. The defendant and the victim's sister-in-law were the only other adults shown to have been present on the premises at or about the time of the victim's death. The victim had suffered substantial injuries consistent with being punched, struck by an iron, kicked by a shod foot, and strangled with a cord.

The defendant raises several issues. He argues that (1) statements he made to the police in the cellar of the victim's home should have been suppressed, (2) evidence of

the victim's state of mind toward him should not have been admitted, (3) various portions of the prosecutor's charge to the jury were highly improper and unfairly prejudicial, (4) certain of the judge's instructions to the jury were erroneous, and (5) in any event, this court should exercise its powers and duty under G. L. c. 278, § 33E, to grant the defendant a new trial, or at least to reduce the degree of guilt. The facts necessary to an understanding and resolution of each issue will be set forth where necessary as each issue is considered. We affirm the conviction and decline to alter the result pursuant to our powers under G. L. c. 278, § 33E.

1. We consider first the defendant's contentions concerning the denial of his motion to suppress statements which he made to the police.

The defendant challenges the judge's failure to suppress statements made to the police officer who questioned the defendant initially at the victim's home. Officer Wargin (Wargin) of the Newton police department, who was operating an auxiliary ambulance, responded to a radio message relaying a call from the victim's home. When he arrived, the victim's sister-in-law directed him to the cellar, saying, "they had a fight." He went to the cellar where he found the victim's body and the defendant. The defendant said, "Help her." Wargin spent about five minutes checking the victim for vital signs and found none. He asked the defendant if there was any way out of the cellar other than the stairs. The defendant, who knew the house, said there was not. The defendant appeared very upset. Wargin then asked another officer to summon a superior and asked the defendant to come into a laundry room which adjoined the area where the victim lay.

The laundry room, which comprised half the basement, was warm, about eighty degrees, the same temperature as the outside air. The room was lit by a single closed window and an overhead light bulb. The defendant was naked from the waist up and had blood on his left shoulder and on his hands. The defendant was seated in a chair.

Wargin spoke to the defendant for about ten minutes in

the laundry room. He asked the defendant his name and home address. In response to other questions, the defendant said that the victim was his girl friend and they were planning to get married. He said that on that day she had arrived at the house after he had and they talked of plans for their marriage. He related that he got mad when the victim said she wanted to adopt "colored children." They had an argument, and she left the room. Later he went through the house looking for her. He found her in a crouched position at the bottom of the cellar stairs. He said he moved her to the position in which Wargin found her.

The questioning proceeded slowly. Wargin told the defendant to calm down and relax. In the course of the questioning Wargin suggested that the defendant use some water and wash off, which he did. The defendant was not denied the freedom of movement. No Miranda warnings were given to the defendant by Wargin.

The judge concluded that the questioning of the defendant was not physically or psychologically coercive, that the questioning had not focused on the defendant, and that there was no custodial interrogation. He ruled that the defendant's answers were given freely and voluntarily.

Constitutional considerations do not require the suppression of the statements made by the defendant to Wargin, even though Wargin did not give Miranda warnings to the defendant. The essential consideration has been whether the defendant has been taken into custody or otherwise deprived of freedom of action because suspicion has crystalized on him. *Commonwealth* v. *Valliere*, 366 Mass. 479, 487 (1974). The questions were preliminary, directed to discovering who the defendant was and what he knew about the circumstances. Wargin did not proceed aggressively in his questioning. He spent the first five minutes in the cellar attending the victim in the defendant's presence. Only when Wargin was certain he could do nothing for her did he turn his attention to the defendant.

This series of natural preliminary questions put to the defendant did not constitute custodial interrogation. See

*Commonwealth* v. *Cutler,* 356 Mass. 245, 246-247 (1969);
*Commonwealth* v. *Doherty,* 353 Mass. 197, 214 (1967),
cert. denied, 390 U.S. 982 (1968); *Commonwealth* v.
*O'Toole,* 351 Mass. 627, 630-631 (1967). The defendant's
various answers were not inculpatory on their face and
hence during the questioning no occasion arose requiring
Miranda warnings. The fact that the circumstances may
have changed during subsequent questioning does not
affect the nature of the preliminary interrogation. See
*United States* v. *Hall,* 421 F.2d 540, 545 (2d Cir. 1969),
cert. denied, 397 U.S. 990 (1970).

The Supreme Court of the United States has recently
indicated that the basic consideration in determining
whether questioning is "custodial" is whether the situa-
tion presents elements which are inherently coercive.
*Beckwith* v. *United States,* 425 U.S. 341, 344-351 (1976).
The judge was warranted in concluding that Wargin's
questioning of the defendant was free of coercion. Our
conclusion on the largely undisputed facts, as found by
the judge, is that the situation was not inherently coercive.

The defendant also argues that his statements should
be suppressed because the provisions of G. L. c. 276, § 33A,
were violated. Section 33A, as amended through St. 1963,
c. 212, provides that "[t]he police official in charge of the
station or other place of detention having a telephone
wherein a person is held in custody, shall permit the use
of the telephone" for certain purposes. The arrested person
must be "informed forthwith upon his arrival at such sta-
tion or place of detention, of his right to so use the tele-
phone . . . ." We agree with the ruling of the judge that
"the basement of the [victim's] home, in the circum-
stances of this case, was not a 'place of detention' within
the meaning of the statute."

The defendant next contests the judge's failure to sup-
press statements made to other police officers who arrived
in the cellar of the victim's home immediately after the
questioning by Wargin. Miranda warnings were given to
the defendant before he made any further statement.
These subsequent statements largely confirmed the de-

fendant's earlier statements, although he said for the first time that, after the victim and he had the argument, he left the house, walked to Newtonville Square and back, and then found the victim. The defendant explicitly denied killing the victim.

The judge found that the Miranda warnings were clear, complete, and valid. He found that the defendant understood his rights and knowingly and intelligently waived them before questioning began. He found that the questioning was fair, dignified, and restrained and that there was no physical or psychological coercion. He concluded that the Commonwealth had sustained its heavy burden of demonstrating that the defendant knowingly, freely, and intelligently waived his rights.

The judge's findings on this point are fully warranted.[1] The voluntariness of the defendant's action is tested by examining the totality of all the surrounding circumstances. See *Commonwealth* v. *Hosey,* 368 Mass. 571, 574 (1975); *Commonwealth* v. *Daniels,* 366 Mass. 601, 606 (1975); *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 226 (1973). The defendant was twenty-three years old and of above average intelligence. He had attended high school and had earned a high school equivalency certificate during four years in the Coast Guard, where he studied navigation. After leaving the Coast Guard he studied computer programming. It was not necessary to informed consent that the defendant be told that he was a suspect. Indeed, it is inconceivable that, after being given Miranda warnings, the defendant did not realize that he was a suspect. His expressed willingness to tell the police "anything you want to know" supports the judge's finding of a knowing, voluntary waiver of rights.

The defendant also objects to the admission of testimony concerning his appearance and his actions while he was answering questions from the police. The defendant's

---

[1] The judge did exclude a statement by the defendant that he would probably need a lawyer and all the defendant's statements made thereafter.

demeanor and behavior in the course of police interroga-
tion certainly was relevant because it helped the jury in
assessing the answers given. This is not a case where the
prosecution introduced evidence of the defendant's silence
at a time when the defendant had no obligation to speak.

2. The defendant next argues that evidence of the vic-
tim's state of mind toward him shortly before her death
was admitted improperly. This evidence, which was not
admitted to prove the truth of any fact asserted, consisted
of statements made by the victim on various dates to
others outside of the defendant's presence. These state-
ments indicated that the victim had abandoned her plans
to marry the defendant and intended instead to terminate
their relationship.

The judge instructed the jury to consider this evidence
only on the question of the victim's state of mind toward
the defendant when the statements were made. One state-
ment was admitted solely as bearing on the victim's state
of mind "[in] so far as the jury may determine that it has
some bearing on [the victim's] conduct...."

There was testimony also that in early 1974, the defend-
ant and the victim had told her sister-in-law that they
were going to be married. On the day of the victim's death
the defendant told the victim's sister-in-law that he was
concerned about differences of opinion between the victim
and himself. The victim's sister-in-law told the defendant
that they should discuss their differences and that he
should not marry the victim if he did not love all of her.
He replied that he loved the victim and had to marry her.

The evidence concerning the victim's state of mind
toward the defendant was admitted properly. Such evi-
dence is admissible when it relates to a material issue in
the trial. *Commonwealth* v. *Gilbert,* 366 Mass. 18, 28
(1974). Cf. *Goldman, petitioner,* 331 Mass. 647, 651 (1954).
Thus, we have said that evidence of a victim's recent
expression of a suicidal intent was improperly excluded
in the circumstances (*Commonwealth* v. *Trefethen,* 157
Mass. 180, 194-195 [1892]), and that, in other circum-
stances, evidence of a victim's state of mind inconsistent

with suicide properly was admitted (*Commonwealth* v.
*Howard,* 205 Mass. 128, 132 [1910]; cf. *Commonwealth*
v. *DelValle,* 351 Mass. 489, 492 [1966]). Evidence of a poor
marital relationship between a victim and a defendant is
admissible to show the defendant's motive for the murder
of his spouse. *Commonwealth* v. *Martin,* 357 Mass. 190,
192 (1970), and cases cited. Although the Commonwealth
is not required to prove that a defendant had a motive
for committing a crime, if there is evidence of motive, that
evidence is admissible. *Commonwealth* v. *Bonomi,* 335
Mass. 327, 355 (1957).

In the case before us, the deceased's attitude toward
the defendant was relevant to the question whether the
defendant had any motive to kill her. 2 J. Wigmore, Evi-
dence § 390 (3d ed. 1940). The deterioration of the rela-
tionship between the defendant and the victim on the day
of her death was significant in assessing whether the de-
fendant had any motive to do the victim bodily harm.

The only question is whether evidence of the victim's
state of mind toward the defendant on the day of her
death and during the weeks just prior to her death was
inadmissible when there was no direct evidence that the
defendant was aware of the full character of the victim's
attitude toward him. Obviously, the victim's state of mind
can be relevant to the defendant's motive only if there is
reason to believe that the defendant knew of that state
of mind. We think that the jury would have been war-
ranted in inferring that the deceased told the defendant
of her attitude toward him and her plan not to marry him.
The defendant himself told the victim's sister-in-law of a
previous argument with the victim concerning their rela-
tionship. He admitted to the police that they had had an
argument. If the victim was willing to tell third persons
that her relationship with the defendant had deteriorated
and that she had told or would tell the defendant that their
relationship would end, it is inferable that by word or
action, or both, she communicated her feelings to the de-
fendant. *Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285,
295-296 (1892). Therefore, we think that evidence of the

Commonwealth *v.* Borodine.

material fact of the victim's state of mind toward the defendant was not rendered inadmissible because of the absence of direct evidence that the victim had communicated her attitude to the defendant.

3. The defendant challenges several aspects of the prosecutor's closing argument to the jury.[2] Some of his contentions are without merit. Others point to clear prosecutorial error, and our task is to assess whether those errors are prejudicial in light of all of the circumstances, including instructions from the judge which were designed to nullify the improprieties of the prosecutor.

In the course of his closing argument, the prosecutor said that the victim "did not have an enemy in the world. If she did, you would have heard about it, that is for sure." On prompt objection, the judge said, "No. The defense does not have to produce any witnesses. The jury will disregard that remark." In his charge to the jury the judge instructed the jury on the presumption of the defendant's innocence and that the defendant did not have to offer any proof. The Commonwealth concedes that the remark was improper. We think, however, that the defendant's rights were adequately protected by the judge's instructions to the jury, to which the defendant did not except. See *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 262 (1970); *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954).

Another error was committed when the prosecutor asserted that the defendant "has never had a shred of remorse from the beginning right up until now." The Commonwealth concedes that this remark also was improper, granting that the presence or absence of remorse is immaterial. This error was one on which the defendant relied in moving for a mistrial, but he did not object when the statement was made. In his charge, the judge criticized the prosecutor's reference to the absence of remorse. He called the argument immaterial and inappropriate and

---

[2] The only exception taken by the defendant was to the denial of his motion for a mistrial made at the close of the prosecutor's summation.

advised the jury that the defendant had "no obligation to express to anyone his feelings about this incident." The prosecutor's error was covered explicitly by the judge's charge and, in our opinion, cured.

The defendant relies on an artless choice of words employed by the prosecutor in an attempt to explain that the jury had to draw the ultimate conclusion from the specific facts. In so doing, he remarked that "[s]everal witnesses, if they were permitted, Lieutenant Duffy, Doctor Bigelow and so on and so forth, or if they were talking to you in the lobby, would tell you that as a matter of fact he smashed her over the head with the point of the iron, but they can't say that to you." The judge sustained the defendant's prompt objection and added an instruction that the jury should be concerned only with what the witnesses said and that they should not speculate as to what the witnesses might have said.[3] The remark was not a reference to facts not in evidence which the prosecutor inferred were known to him. Although this argument was clearly inappropriate, the judge's instructions eliminated any prejudice in the error, in the context in which the remark was made. *Commonwealth* v. *French,* 357 Mass. 356, 403 (1970), judgments vacated as to the death penalty sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972).

The defendant's other challenges to the prosecutor's closing argument do not disclose any error of law. (a) An argument that the defendant "knows" he is guilty may add little to the force of a prosecutor's argument. We do not regard such an argument, standing alone, as an improper reference to the defendant's failure to testify. (b) References to certain facts as "uncontested" are improper when the defendant himself is the only one who can contradict the evidence. *Commonwealth* v. *Domanski,* 332 Mass. 66, 70-71 (1955). See Annot., 14 A.L.R.3d 723, 730

---

[3] The defendant did not object to the judge's instructions, but this remark was one of the several on which the defendant relied in arguing for a mistrial at the close of the prosecutor's argument.

(1967). A claim that certain evidence is uncontested should be made with caution and only after careful reflection concerning the specific circumstances in which the defendant could have produced contradictory evidence. Here the "uncontested" evidence was that the victim no longer planned to marry the defendant. It was not a fact which could have been refuted only by the defendant taking the stand. (c) The reference to the defendant's appearance in the court room was not improper. *Commonwealth* v. *Valliere,* 366 Mass. 479, 494 (1974). As indicated above, the judge corrected the reference to the defendant's remorse and, if he had been asked to do so, he might well have concluded in his discretion to instruct the jury that no evidence of guilt arises when a defendant sits calmly in the court room. (d) Comment on the tactics of the defense is not improper where the conduct referred to occurred within the course of the trial, in the presence of the jury. *Commonwealth* v. *MacDonald (No. 1),* 368 Mass. 395, 401 (1975). *Commonwealth* v. *Coleman,* 366 Mass. 705, 714 (1975). *Commonwealth* v. *Dunker,* 363 Mass. 792, 799-800 (1973). (e) As indicated above, an inference was warranted, in the circumstances, that the victim had communicated her feelings about him to the defendant. Consequently, the prosecutor could argue properly to the jury that the victim's attitude toward the defendant gave him a motive to kill her.

The defendant argues quite properly that the prejudicial impact of the prosecutor's charge should be assessed by looking at the combined effect of all his errors. We think that, both in his charge to the jury and in response to valid objections during the course of the prosecutor's summation, the judge's careful instructions put the errors in proper perspective and eliminated any prejudice to the defendant.

A prosecutor, as an "administrator of justice," has a special obligation to present a fair argument to the jury. ABA Standards Relating to the Prosecution Function 1.1 (b) (Approved Draft 1971). It is hardly fitting for a prosecutor to have to rely on curative instructions to the

jury to overcome his failure to assure that his jury argument is proper. Careful preparation of the prosecutor's closing argument, for which there was ample time available, probably would have eliminated the errors which are now admitted on appeal and would have produced a better organized, more persuasive, and fairer summation.

Recently, we have reversed a conviction because of an unwarranted, overbearing summation by a prosecutor who persisted in his improper argument. We concluded that the judge's attempted curative instructions were incapable of achieving their intended effect of eliminating the possibility of significant prejudice. *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976). Even more recently, we have set aside a conviction where a prosecutor's prejudicial misstatement of law was not cured by the judge, although he was requested to do so. *Commonwealth* v. *Killelea,* 370 Mass. 638, 648 (1976). We affirm only because, in the case now before us, the prosecutorial misconduct was not as flagrant or persistent as in those two recent cases, nor were there adequate curative instructions in those cases.

4. The defendant's challenges to certain aspects of the judge's charge to the jury are without merit.

The judge's instructions concerning evidence that the defendant was elsewhere when the victim was killed were not unduly restrictive. Indeed the judge substantially followed the language which we approved in *Commonwealth* v. *McLeod,* 367 Mass. 500, 502 n.1 (1975). That he did not use the word "alibi" is without significance.

An instruction on voluntary manslaughter was not required. *Commonwealth* v. *Zukoski,* 370 Mass. 23, 28-29 (1976). There was no evidence which would support a finding of reasonable provocation which in turn would have permitted the jury to convict the defendant of manslaughter.

The defendant cannot complain now that the judge should not have told the jury that "a verdict of guilty of murder in either the first or second degree in this case does not and cannot permit the imposition of the death penalty." The judge advised the defendant that he was

intending to charge the jury concerning the inapplicability of the death penalty, and the defendant did not object at that time. Although the general rule in this Commonwealth and elsewhere is that the jury should not consider the sentence to be imposed if the defendant is found guilty (see *Commonwealth* v. *Mutina*, 366 Mass. 810, 823 n.12 [1975]), the instruction given here was a correct statement of the law, to which, although warned, the defendant raised no timely objection.

5. We have reviewed the record in light of the requirements of G. L. c. 278, § 33E, and find no occasion to grant a new trial or to reduce the degree of guilt.

*Judgment affirmed.*