COMMONWEALTH *vs.* PAUL VINCENT GRAMMO.

Hampden.    September 10, 1979. — October 18, 1979.

Present: HALE, C.J., ARMSTRONG, & GREANEY, JJ.

*Arson. Search and Seizure. Constitutional Law,* Search and seizure.
*Evidence,* Other offense. *Practice, Criminal,* Argument by prosecutor.

At the trial of a defendant charged with arson, there was sufficient
evidence to warrant findings that the police had probable cause to
arrest the defendant and that his inculpatory statements were not,
therefore, the fruits of an illegal arrest and subject to exclusion.
[448-452]

At the trial of two indictments charging the defendant with arson, the
judge did not err in permitting a district fire chief and a captain of
a fire department to testify to their opinions that the fires in issue
were intentional or incendiary in origin. [452-453]

The defendant in a criminal case was not prejudiced by testimony
indicating that he had committed other crimes unrelated to the
crimes for which he was being tried where the judge immediately,
forcefully, and repeatedly cautioned the jury to disregard the remarks. [453-455]

Although the judge at an arson trial erroneously admitted evidence
of a Commonwealth witness's military record and employment
status to answer the defendant's implied accusation that the witness had set the fire rather than the defendant, reversal was not
required where there was compelling evidence of the defendant's
guilt. [455-456]

Although a prosecutor's closing argument was improper in some respects, the judge's instructions were sufficient in the circumstances
to dispel any harm that might have occurred. [456-458]

INDICTMENTS found and returned in the Superior Court
on January 6, 1978.

The cases were tried before *Simons,* J.

*William T. Walsh, Jr.,* Assistant District Attorney, for
the Commonwealth.

*Beth H. Saltzman* for the defendant, submitted a brief.

GREANEY, J. Paul Vincent Grammo appeals two convictions by a jury of arson of a dwelling house (G. L. c. 266, § 1) stemming from incidents on the nights of October 19 and 23, 1977, at the same multiple family building situated at 379 Birnie Avenue in Springfield. We affirm the convictions.

Grammo argues several assignments of error on appeal. Specifically, he asserts that (1) the motion judge erred in declining to suppress inculpatory admissions given by him to the police after his arrest; (2) the trial judge erred in several evidentiary rulings made in the course of the trial; and (3) the prosecutor's final argument was so egregious as to require reversal. The evidence relevant to a resolution of the various assignments will be summarized in the course of the discussion.

1. *The motion to suppress.* Grammo was arrested at his home by Officers Dowd and Milligan of the bomb-arson squad of the Springfield police department on November 3, 1977, under the authority of a warrant issued by a clerk of the District Court of Springfield. While being transported to the station by the officers, Grammo stated, "All right, I set the fire on Birnie Avenue, my house, and when I get to the station, I'll give you a statement and I'll sign it and I'll tell you everything." Later that day, after being charged and booked, Grammo added to the previous admissions by informing the booking sergeant at the police station, "How can there be two warrants? I only lit one fire."[1] Prior to trial, his counsel filed a motion to suppress these admissions on the basis that the police lacked probable cause to arrest Grammo and, as a result, that the admissions were the fruits of an illegal arrest subject to exclusion under the principles of *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963), and its progeny.

_____

[1] The defendant later withdrew his offer to provide a signed statement which would describe all of the details of the arsons.

A voir dire was held on the motion directed to the question of probable cause. The evidence established that when Officer Dowd appeared before the clerk, he had knowledge that the building, a three-family tenement, had been the subject of two incendiary fires within days of each other. The fire on October 19, 1977, had originated in the cellar and had been confined to that area. The fire on October 23, 1977, also had originated in the cellar and had caused extensive damage to the first and second floors of the building.[2] The officer possessed photographs which presumably depicted the damage caused by the fires. He also knew that Grammo lived in the second floor apartment with his mother and a cousin, Lawrence Suprenant, who had moved in approximately two weeks prior to the first fire. There had been discussion between Dowd and another officer indicating that Grammo was observed outside the building during the response to the second fire.

Grammo's prior conviction for arson had been unearthed in the course of the investigation. The principal material bearing on Grammo's involvement was contained in a written statement given to the police by Suprenant on November 2, 1977. The material contents of that statement indicated that, in the approximate two weeks Suprenant had resided with Grammo, the latter had awakened him at night on at least four occasions and asked him if he had smelled smoke. This pattern was repeated on the nights of October 19 and 23, when Grammo again disturbed his sleep, inquiring if he smelled smoke. The statement also indicated that, within two

---

[2] Evidence at trial established that the October 19, 1977, fire consisted of three separate fires approximately ten feet apart and involved burning in two piles of newspapers and the combustion of materials three feet above the oil storage tank. There were no "related trailers" linking the fires, and structural members in the cellar were charred. The fire on October 23, 1977, originated in the remains of a dresser or bureau in the cellar, caused extensive damage to the basement, and extended through the first and second floors of the building.

weeks prior to the fires, Grammo had told Suprenant that he was the best "torch" man in the city, that he set fires, and that he had set fire to his Uncle Walter's apartment a few years earlier and had been questioned by the police with regard to that fire but had avoided detection. All this information was given to the clerk as the basis for the warrant, with the possible exception of the fact of Grammo's prior arson conviction.[3] The defendant now focuses his argument solely on Suprenant's written statement and maintains that it contained hearsay information which fails the authenticating two-pronged test for such information formulated in *Aguilar* v. *Texas*, 378 U.S. 108 (1964) (as later refined in *Spinelli* v. *United States*, 393 U.S. 410 [1969], and *United States* v. *Harris*, 403 U.S. 573 [1971]). See *Commonwealth* v. *Stevens*, 362 Mass. 24, 26-27 (1972) (applying the *Aguilar* formulation to the existence of probable cause to arrest). Specifically, the defendant argues that there had been no showing of Suprenant's reliability and no showing of circumstances linking Grammo to the crimes.

We are obliged to appraise all of the information, including the contents of the statement, in a commonsense fashion, avoiding a hypertechnical, strained, or grudging analysis (*Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 625 [1978]; *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 762-763 [1978]), under the standard that a finding of probable cause, while demanding more than mere suspicion, requires a lesser showing than that which is necessary to justify a conviction. *Draper* v. *United States*, 358 U.S. 307, 311-312 (1959). *Commonwealth* v. *Snow*, 363 Mass. 778, 784 (1973). The information is to be evaluated as a whole, and it is permissible to draw reasonable inferences therefrom. *Commonwealth* v. *Stewart*, 358 Mass. 747, 750-752 (1971), and cases cited. While it may not be easy to determine when the police have supplied enough

---

[3] At the voir dire, Officer Dowd could not recall whether he had informed the clerk of Grammo's prior record.

facts to justify an arrest in a particular case, the resolution of doubtful or marginal cases should be determined largely by the preference to be accorded to warrants (*Commonwealth* v. *Blye,* 5 Mass. App. Ct. 817 [1977], and cases cited), particularly since a warrant is ordinarily required when the arrest is to be made in a dwelling. *Commonwealth* v. *Forde,* 367 Mass. 798, 804-806 (1975) (plurality opinion).

Applying these standards, we conclude that even with the exclusion of the prior arson conviction at the time the warrant was sought, a showing of probable cause had been made. There was solid evidence that the fires were incendiary in character. The temporal proximity of the two acts of arson in the basement of the small building suggested that one of the residents was responsible. Grammo was observed at the scene on the night of the second fire. His frequent badgering of Suprenant over a two-week period about smelling smoke demonstrated an uncommon concern about fires which, in the context of the circumstances, permitted inferences that the defendant knew about the fires before anyone else,[4] that he may have wanted to alert his relatives to their existence, and that he may have attempted to burn the building prior to October 19, 1977. Some emphasis could legitimately be placed on the defendant's actions on the night of each fire when viewed in light of his statements that he set fires, that he was the best torch man in the city, and that he had burned a relative's apartment without detection. These statements under the circumstances were highly probative. Contrary to the defendant's assertion, the hearsay received by the investigating officer from Suprenant was not of the type received from a nameless informant. Suprenant's status as the supplier of incriminating information was fully disclosed, and his information was

[4] Suprenant stated that on October 23, 1977, he initially assumed that he was smelling the damage from the prior fire when Grammo awakened him.

buttressed by a commitment to repeat its admissible portions under oath to a jury.[5] Furthermore, although Suprenant was not a true victim of the crime, he was a victim in a sense, and the clerk in considering his information could also consider this fact as relevant. *Nelson* v. *Moore,* 470 F.2d 1192, 1197 (1st Cir. 1972), cert. denied, 412 U.S. 951 (1973). Gauging the reliability of information supplied by an intended victim of the crime requires less stringent inquiry than that applied to the information given by an unknown informant. See 1 LaFave, Search and Seizure § 3.4 (1978). "The crucial link between the unsolved arson and the defendant was provided by informants whose reliability was ensured by their status as victims of the offense." *Commonwealth* v. *Cruz,* 373 Mass. 676, 684-685 (1977). In balancing the probabilities, there was a showing made before the clerk rising above a bare suspicion that the defendant was the person involved in setting the fires. Because of the existence of probable cause when the warrant was issued, the incriminating statements made by Grammo flowed as the aftermath of a lawful arrest, and the defendant's contention that the statements should have been suppressed as the fruits of an illegal arrest was properly rejected.

2. *Evidentiary rulings.* The second series of exceptions concerns rulings made by the trial judge which dealt with expert opinions as to the origin of the fires, questions by the prosecutor of Commonwealth witnesses which it is claimed tended to reveal the defendant's prior criminal record, and evidence produced in rebuttal tending to show Suprenant's good character.

(*a*) *Opinion testimony.* As part of its case in chief, the Commonwealth presented evidence through Edward J. Franz, Jr., and Fred Tyburski, a district fire chief and a

[5] The statement indicated that anything in it could be used against Suprenant "in the event I am prosecuted in any court of law" and ended with a commitment to testify to the facts contained in it and a statement that its contents were "true to the best of my knowledge and belief."

captain, respectively, of the Springfield fire department, that the fires in issue were intentional or incendiary in origin. It is argued on appeal that the judge's failure to exclude this testimony was error because the opinions impermissibly invaded the jury's consideration of an ultimate issue in the case—whether the fires had been wilfully set. We need not consider this argument because it was not made before the trial judge and is made for the first time on appeal. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976). *Corman Realty, Inc.* v. *Rothstein*, 4 Mass. App. Ct. 777 (1976). The only basis of objection provided to the trial judge was that the witnesses lacked qualifications to express the type of opinion elicited. The judge was supplied with sufficient evidence on the foundation requirements regarding the experience and expertise of the officers, and his decision to admit the evidence reveals no abuse of discretion or error of law on his part. *Perkins* v. *Stickney*, 132 Mass. 217, 218 (1882). *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951). *Matsushita Elec. Corp. of America* v. *Sonus Corp.*, 362 Mass. 246, 264 (1972). As to the merits of the defendant's argument, see *Commonwealth* v. *Harris*, 1 Mass. App. Ct. 265, 268-272 (1973), which held that it was not improper to admit expert testimony that a fire was incendiary in nature, and *Commonwealth* v. *Siano*, 4 Mass. App. Ct. 245, 248-249 (1976), which held that there was no error in the admission of expert testimony concerning the nature of the remains of a fire.

(b) *Defendant's prior record.* In the course of examining Suprenant, the prosecutor elicited testimony that on a prior occasion Grammo had told Suprenant that he was once the best torch man in the city. Upon defense objection, the judge struck the answer and instructed the jury to disregard the response. Later in the same examination, Suprenant, in response to a question by the prosecutor, testified that Grammo "told me that he had burned my Uncle Walter's place." Defense counsel objected, moved to strike the answer, and moved for a mistrial. The mo-

tion to strike was allowed, the motion for a mistrial denied, and the judge carefully instructed the jury that the response was not to be considered by them and that they were to confine their attention solely to the charges set forth in the indictments. Later in the trial, Officer Dowd, in describing the defendant's arrest, testified that the defendant "stated that he had served time in . . . ." The answer was halted by an objection before it was completed. The abbreviated response was struck, a motion for mistrial was denied, and the jury instructed to disregard the comment. The defendant argues that the judge committed reversible error in the manner in which he dealt with the assorted objections and motions for mistrial.

Of course, evidence of other crimes and prior misconduct by the defendant may not be received because it "forces the defendant to answer accusations not set forth in the indictment, confuses his defense, diverts the attention of the jury, and may create undue prejudice against him." *Commonwealth* v. *Clifford,* 374 Mass. 293, 298 (1978). See also *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947); *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654 (1957); *Commonwealth* v. *Nassar,* 351 Mass. 37, 42-43 (1966). But the harmful effect of such evidence can be dispelled by a judge's careful warning to the jury. Here the impropriety in the answers was immediately cured on two occasions by the judge's instructions that the jury disregard the remarks, and on the third occasion, by the warning that the jury confine their attention only to the crimes charged in the indictments. Still later in the trial, the judge again expressly told the jury that any material which had been struck was to be disregarded, and the same cautions were repeated in the final instructions. The judge's prompt attention to the objections and his explicit instructions erased any potential for error. We adhere "to a practical view which does 'not assume that jurors will slight strong and precise instructions of the trial judge to disregard the matters which have been withdrawn from their consideration.' " *Commonwealth* v.

*Clifford,* 374 Mass. at 298, quoting from *Commonwealth v. Gordon,* 356 Mass. 598, 604 (1970). See *Commonwealth v. Stone,* 366 Mass. 506, 513 (1974).

(c) *Character evidence.* The defendant's mother testified that on the night of the second fire the defendant was in her presence, and that on that same night Suprenant was in the basement, intoxicated, during the period the fire might have started. It was hoped by this evidence that the jury would find that the defendant did not start the fire, that Suprenant was the arsonist, and that the Commonwealth had not met its burden of establishing the defendant's guilt. In rebuttal, the prosecutor recalled Suprenant, who testified, over defense counsel's objection, to his record of distinguished military service, which included the receipt of several medals and "a certificate of appreciation from President Nixon." He also testified that a local company gave him a security clearance to handle guns. He concluded his rebuttal by denying that he had entered the cellar on the night of October 23, 1977. The defendant argues that the judge committed reversible error by admitting evidence of Suprenant's good character when evidence of his bad character had not been offered and where his character had not been otherwise discredited. *Commonwealth v. Ingraham,* 7 Gray 46, 48-49 (1856). *Commonwealth v. Beal,* 314 Mass. 210, 229-230 (1943).

Ordinarily, evidence of a witness' good character for veracity cannot be put in evidence unless his character for veracity has been directly attacked. Leach & Liacos, Massachusetts Evidence 130-131 (4th ed. 1967). A witness' testimony which has been discredited may be corroborated by other competent evidence of material facts which tends to make the witness' testimony more credible. *Allin v. Whittemore,* 171 Mass. 259, 261-262 (1898). Evidence pertaining to the witness' military service has generally been held irrelevant as proof of character. See *Commonwealth v. Binkiewicz,* 342 Mass. 740, 755-756 (1961); *Commonwealth v. Spare,* 353 Mass. 263, 266-267

(1967). Any evidence admitted for the purpose of bolstering credibility must have logical relevance to the material issues in the case. See McCormick, Evidence 103 (2d ed. 1972) ("The wall, attacked at one point, may not be fortified at another and distinct point").

In this case, the evidence pertaining to Suprenant's military record and employment status had no logical relevance to answer the defendant's implied accusation that Suprenant had set one fire, and thus, this evidence should have been excluded. However, in the context of the entire case, particularly in light of the compelling evidence of guilt stemming from the defendant's admissions, we think the effect of the evidence was insubstantial and did not enhance the Commonwealth's case, or detract from the defendant's, in any material respect. *Commonwealth* v. *Hanger*, 377 Mass. 503, 510-513 (1979).

3. *The prosecutor's closing argument.* The defendant complains that in three instances the prosecutor's closing argument was improper to a degree sufficient to compel reversal. In the argument, the prosecutor commented that the police had eliminated the other tenants as responsible for the fires. He also argued, over the defendant's objection, that Officer Dowd believed the defendant was guilty.[6] Finally, he argued that the job of defense counsel was "to confuse you so as to affect the burden of proof of the Commonwealth." Subsequent to two of the objections, the judge held side bar conferences in which he indicated to both counsel that he would correct any impropriety in his instructions to the jury. In those instructions the judge praised both counsel for their conduct and ability in the trial, which he depicted as conforming to the "highest standards of tradition of the

---

[6] This argument was in apparent response to defense counsel's argument which indicated that Dowd would like a conviction because he took out the complaint. We need not decide whether the first thrust by the defense in its closing invited a counterattack by the prosecution. See *Commonwealth* v. *McColl*, 375 Mass. 316, 325 (1978), giving "limited tolerance to the principle of 'fight[ing] fire with fire.' "

Commonwealth v. Grammo.

trial bar."[7] The instructions also emphasized that anything said by counsel in argument was not evidence and that the jury's recollection of the evidence controlled. The judge dealt with the belief of the defendant's guilt attributed to Dowd as noted in the margin.[8] At the close of the instructions, defense counsel renewed only a request for a further instruction on the comment concerning the defense counsel's function. The judge declined to instruct further on the topic.

We believe that the judge's handling of the matters at side bar called for renewal of the objections at the close of the charge. Defense counsel's failure to request further instructions, except as to the remarks denigrating from the defense function, indicates to us that the other complaints had been corrected to his satisfaction. As to the downgrading of the defense function, we conclude that the judge's instructions were sufficient in the circumstances to dispel any harm that might have occurred. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 11-12 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Charles,* 4 Mass. App. Ct. 853, 854 (1976). We emphasize again, however, that the prosecutor has a special obligation to present a fair argument to the jury and that extemporized arguments only serve to increase the burdens on the trial judge and to provide grist for the appellate mill. As was said in the *Borodine* case, "[c]areful preparation of the prosecutor's closing argument, for which there was ample time available, probably would have eliminat-

---

[7] In addition to this bestowal of praise, the judge later informed the jury that "both attorneys acted properly and according to the highest principles of trial advocacy."

[8] "[I]f the attorneys in their appropriate workings and doings of their duty recite to you or suggest to you an opinion of themselves or of any other witnesses in the case as to the guilt or innocence of this defendant or as to what a fact is, then you are to totally disregard that because that's only your function . . . so anyone else's suggestion to you of what their belief is or what anyone else's belief is, is not to be considered by you."

ed the errors which are now admitted on appeal and would have produced a better organized, more persuasive, and fairer summation." 371 Mass. at 12. See *Commonwealth* v. *Cepulonis*, 7 Mass. App. Ct. 646, 650 (1979). See also S.J.C. Rule 3:22A, PF 13(a) and 14, 377 Mass. 927 (effective March 1, 1979).[9] We continue to hope that well aimed volleys will replace misdirected barrages.

<div align="right">

*Judgments affirmed.*

---

[9] These rules provide in pertinent part:

PF 13(a) "The prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence."

PF 14 "It is unprofessional conduct for the prosecutor intentionally at trial to refer to or argue on the basis of facts outside the record."