## COMMONWEALTH vs. ANDREW M. TODD.

Berkshire. January 8, 1985. — May 13, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Severance. *Evidence,* Prior conviction, Photograph, State of mind. *Witness,* Impeachment.

The judge in a criminal case did not abuse his discretion in denying the defendant's motion that an indictment charging him with first degree murder be tried separately from indictments charging assault with intent to murder, assault by means of a dangerous weapon, and unlawfully carrying a firearm, where the assault charges arose from an incident some four hours after the murder as a State trooper attempted to take the defendant into custody, and where the firearms charge arose from the defendant's possession of a shotgun alleged to have been used for the murder and the assault on the State trooper. [794-795]

At the trial of a murder case, there was no error in the admission of prior convictions of the defendant for arson and statutory rape to impeach the defendant's credibility. [795-796]

At the trial of a murder case, the judge did not abuse his discretion in admitting in evidence two color photographs depicting gunshot wounds to the victim's upper chest and lower throat and the victim's right shoulder. [796]

At the trial of a murder case, there was no error in the admission of testimony by the victim's mother that several days before the shooting the victim had torn up a marriage license for the victim and the defendant, where the judge instructed the jury to consider it only as evidence of the victim's state of mind, and where the victim's state of mind was relevant to the defendant's motive as there was other evidence from which the jury could infer that the defendant knew of the victim's intention to separate from him. [797-798]

At the trial of a murder case, there was no error in the admission of testimony that some four weeks before the shooting the defendant and the victim had engaged in a heated argument and that about four or five weeks before the shooting the defendant had asked the witness to sell the defendant a gun, stating that the victim "has got to die." [798]

INDICTMENTS found and returned in the Superior Court Department on June 10, 1983.

The cases were tried before *John F. Murphy, Jr.,* J.

*Louis J. Oggiani* for the defendant.

*Daniel A. Ford,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. In June, 1983, a Berkshire County grand jury returned four indictments against the defendant, Andrew M. Todd, charging him with murder in the first degree, assault with intent to murder, assault by means of a dangerous weapon, and carrying a firearm without legal authority. In October of that year, a jury found the defendant guilty on all four indictments. The trial judge sentenced him to life imprisonment at the Massachusetts Correctional Institution at Cedar Junction for the conviction of murder in the first degree.[1] The defendant appeals to this court pursuant to G. L. c. 278, § 33E.

Shortly after 10 P.M. on May 18, 1983, while working at the Modern Aluminum Anodizing Corporation in North Adams, the victim, Tammy Peckham, was shot to death by a person who fired a shotgun at her through a factory window. She was eighteen years old at the time of her death, and was the girl friend of the defendant. The defendant and the victim had a tumultuous relationship in which marriage had been discussed. They had lived together intermittently during the four-year period before the victim's death; they had one child.

The Commonwealth based its case on circumstantial evidence. Various witnesses testified to the following events. The victim's mother, Virginia Ann Schwarzer, testified that her daughter did not wish to marry the defendant. In fact, the victim had torn up a marriage license for the defendant and herself shortly before her death.

Norman Lappies, supervisor of the factory where the victim was shot, testified that the defendant and the victim had engaged in a heated argument when she refused to go to the defendant's home. This argument occurred about four weeks before the

---

[1] The defendant was sentenced to eight to ten years for assault with intent to murder, and three to five years for assault by means of a dangerous weapon, to be served concurrently with the life sentence. The indictment for carrying a firearm without legal authority was dismissed.

victim was shot. Also, four to five weeks before the shooting, the defendant had stated to Lappies that he was going to kill the victim and asked Lappies about purchasing a gun. There was further testimony from the defendant's friend, Calvin J. Hebert, that Hebert had purchased a shotgun for the defendant on May 18, 1983. Hebert also stated that the defendant took a shell of double-O buckshot from the glove compartment of Hebert's automobile. Another friend of the defendant, John Vareschi, testified that he and the defendant had consumed alcohol and had smoked marihuana in the early evening of May 18, 1983. At approximately 9:30 P.M. the defendant left with a shotgun, stating that he had to see the victim.

A State trooper testified that in the early morning hours of May 19, 1983, he and his dog were searching a wooded area for the defendant when they came upon him.[2] The trooper shined his flashlight on the defendant, who came to a sitting position and pointed his shotgun at the trooper.[3] The trooper responded by firing his service revolver, wounding the defendant. The defendant was arrested and transported to a hospital.

A ballistics expert testified that the gun in the defendant's possession when he was apprehended was the same gun from which a discharged shell found outside the factory window had been fired. Furthermore, the stamp on the shell casing indicated that the shell had contained the same type of pellets as were found in the victim's body.

The defendant testified that he had been hunting for racoons on the night of the shooting. The defendant stated that he had lived with the victim and had fathered her child. He denied shooting her and denied that he had aimed the shotgun at the State trooper.

On appeal, the defendant argues that the trial judge erred in denying his motion to sever the four indictments for trial. He next argues that the judge erred in allowing the prosecutor to impeach his testimony with evidence of his convictions of arson and of statutory rape. The defendant also contends that

[2] Another trooper had seen the defendant in the area earlier.

[3] The two assault indictments arose from this incident.

the judge erroneously allowed autopsy photographs to be made exhibits at trial. Finally, the defendant asserts that the judge erred in allowing the prejudicial testimony of two Commonwealth witnesses.

1. *Motion for severance.* The defendant argues that the murder indictment should have been severed from the other three charges because joinder of the four indictments was prejudicial. He claims that the offenses involved different victims and were separated in time by approximately four hours. Further, he argues that the murder case was based on circumstantial evidence, while the three other charges were based on eyewitness testimony, and that the effect of the joinder was to prejudice him as to the murder indictment.

A motion for relief from prejudicial joinder is addressed to the sound discretion of the judge. *Commonwealth* v. *Sylvester,* 388 Mass. 749, 754 (1983). *Commonwealth* v. *Hoppin,* 387 Mass. 25, 32 (1982). See Mass. R. Crim. P. 9 (d), 378 Mass. 859 (1979). While joinder may promote judicial economy, it can pose a danger of prejudice to the defendant. A joint trial of related offenses may be improper if joinder of the offenses has the effect of showing a defendant's criminal propensity. Nevertheless, when evidence of other crimes is admissible because the evidence demonstrates a state of mind, common scheme, plan, or method of action bearing on the crime charged, related offenses may be properly joined. *Hoppin, supra* at 32-33.

The Commonwealth was entitled to put in evidence in the murder case the circumstances surrounding the defendant's acquisition of the shotgun because the shotgun was the weapon allegedly used. This evidence was relevant on the issue of his intent, and particularly of premeditation. *Commonwealth* v. *Robinson,* 146 Mass. 571, 578-579 (1888). Thus, the gun charge was related to the murder indictment. In addition, the assault charges arose from an incident which occurred in the same area and close in time to the shooting. Evidence that the defendant lurked in the woods a short distance from the murder scene, failed to respond to orders to come out, and pointed a shotgun at a State trooper seeking to take him into custody

would have been admissible in the murder case as evidence of consciousness of guilt. *Commonwealth* v. *Booker,* 386 Mass. 466 (1982). *Commonwealth* v. *Williams,* 378 Mass. 217, 229-230 (1979). Although the admissibility of evidence of other criminal acts is not dispositive of the question of severance under rule 9 (d), *Sylvester, supra* at 757, the charges in this case comprise a series of criminal episodes connected together. See *Commonwealth* v. *Cappellano,* 392 Mass. 676, 678 (1984). The connection lies in the Commonwealth's theory that the defendant illegally procured a shotgun, murdered the victim, and then, when about to be apprehended for that murder, assaulted a State trooper. We find no abuse of discretion.

2. *Prior convictions.* Before the Commonwealth rested, the judge ruled that, should the defendant testify, the Commonwealth could impeach him with prior convictions of arson and statutory rape, but that the name of the rape victim could not be brought to the jury's attention. The defendant objected to this ruling. The judge excluded prior convictions of assault by means of a dangerous weapon, assault and battery, and illegal carrying of a firearm. When the defendant testified, he was impeached in accordance with the judge's ruling. The defendant argues that use of his prior convictions to impeach his credibility constituted error.

The trial occurred before our decision in *Commonwealth* v. *Maguire,* 392 Mass. 466 (1984), where we held that a ruling admitting evidence of a defendant's prior conviction to impeach him is subject to appellate review. Prior to *Maguire,* the judge's decision was not reviewable. See *Commonwealth* v. *Diaz,* 383 Mass. 73, 80 (1981). Even if we apply the *Maguire* standard to this case, there is no error. The convictions at issue fell within the category of convictions which may be used to impeach according to G. L. c. 233, § 21. The judge carefully screened the record of the defendant's convictions and allowed only those prior convictions to be used to impeach the defendant's credibility which he deemed relevant. *Maguire, supra* at 469-470. Cf. Proposed Mass. R. Evid. 609 (a). The prosecutor did not misuse the evidence of prior convictions in his argument to the jury, and the judge gave appropriate limiting instructions

as to their meaning. The charges which the defendant faced in the instant case and the prior convictions were not crimes similar in nature such that the danger of unfair prejudice outweighed the probative value of the evidence. See *Commonwealth* v. *Elliot,* 393 Mass. 824, 833 (1985). There was no error.

3. *Photographs.* The defendant objected to the admission in evidence of two color photographs depicting gunshot wounds to the victim's upper chest and lower throat and the victim's right shoulder, claiming that the photographs were prejudicial and lacked probative value. We find no merit in this contention. The admissibility of photographic evidence rests almost entirely in the discretion of the judge, and a defendant carries a heavy burden in proving an abuse of that discretion. *Commonwealth* v. *Bastarache,* 382 Mass. 86, 106 (1980). *Commonwealth* v. *Clifford,* 374 Mass. 293, 305 (1978). Although the defendant stipulated to the fact that the victim's death was the result of a shotgun blast, the judge had the discretion to admit relevant evidence of that fact. See *Bastarache, supra*; *Commonwealth* v. *Stirling,* 351 Mass. 68, 71 (1966). And although the medical examiner testified as to the mechanisms of death, oral testimony describing the victim's injuries may be supplemented with photographs. See *Commonwealth* v. *Bys,* 370 Mass. 350, 359 (1976); *Commonwealth* v. *Jones,* 319 Mass. 228, 229 (1946). The photographs were probative of the degree of guilt, as they tended to refute the defendant's claim of intoxication. They also tended to show the direction from which the shot was fired. The direction of the shot is a relevant fact because the Commonwealth claimed that the defendant shot the victim through a window by her work station, a location of which the defendant would have particular knowledge. The photographs admitted were neither inflammatory nor unduly grisly. See *Bastarache, supra.* The judge carefully reviewed the photographs offered by the prosecution and allowed only the least offensive to be introduced.[4] There was no abuse of the judge's discretion in this area.

--------

[4] Neither photograph showed the victim's face. The judge excluded photographs showing (1) the victim's lung with a probe indicating the path of the

4. *Testimony of Virginia Ann Schwarzer and Norman Lappies*. The defendant asserts that it was error to allow the victim's mother, Virginia Ann Schwarzer, to testify that several days before the shooting the victim tore up a marriage license for the victim and the defendant. The judge instructed the jury that this testimony was to be considered only as evidence of the victim's state of mind. We believe that the admission of such testimony was proper.

The destruction of the marriage license by the victim could be considered as an extrajudicial, nonverbal assertion of the victim's intent which, if introduced for the truth of the matter asserted, would be, on its face, objectionable as hearsay. See *State* v. *Izzo,* 94 Ariz. 226, 229 (1963). Cf. Fed. R. Evid. 801 (c); Proposed Mass. R. Evid. 801 (c). This particular assertion, however, falls within the state of mind exception to the hearsay rule. See *Commonwealth* v. *Lowe,* 391 Mass. 97, 106, cert. denied, 105 S. Ct. 143 (1984); *Commonwealth* v. *Weichell,* 390 Mass. 62, 74 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Borodine,* 371 Mass. 1, 7-8 (1976), cert. denied, 429 U.S. 1049 (1977). The victim's state of mind would be relevant as to the defendant's motive "only if there is reason to believe that the defendant knew of that state of mind." *Borodine, supra* at 8. We believe that here, as in *Borodine,* the jury would have been warranted in inferring that the victim communicated her state of mind to the defendant. "If the victim was willing to tell third persons that her relationship with the defendant had deteriorated . . . it is inferable that by word or action, or both, she communicated her feelings to the defendant." *Id.* Moreover, Virginia Ann Schwarzer testified that she had told the defendant that the victim intended to separate from him, and the defendant's friend, John Vareschi, testified that just prior to the shooting the defendant had told him that "his 'old lady' didn't want him no more." There was sufficient evidence from which the jury could infer that the defendant knew of the victim's state of mind. Additionally,

bullet, (2) a full body view of the victim lying on the autopsy table, and (3) the victim's face with her eyes and mouth open and a tube extending from her mouth.

the judge properly instructed the jury that they could not consider this evidence unless they found that the defendant was aware of that state of mind prior to the homicide. See *Lowe, supra.*

The defendant also argues that the judge erred in admitting the testimony of Norman Lappies. Lappies testified that, approximately four weeks before the shooting, the defendant and the victim had engaged in a heated argument which culminated with the defendant's dragging the victim out a door by her feet. He also stated that four to five weeks before the shooting the defendant had asked that he sell the defendant a gun and that the defendant had stated at that time that the victim "has got to die." We discern no error in the admission of this testimony.

Evidence of a hostile relationship between the defendant and the victim is relevant to the defendant's state of mind and motive to kill the victim. See *Commonwealth* v. *Gil,* 393 Mass. 204, 215 (1984); *Commonwealth* v. *Little,* 376 Mass. 233, 238 (1978). Whether such evidence occurred at a time too remote from the crime to be of probative value is a decision left largely to the discretion of the trial judge. *Gil, supra* at 216, and cases cited therein. We cannot say that statements made and a violent episode occurring approximately four weeks before the shooting were too remote in time, especially where there was evidence of another threat several days before the killing. The judge properly instructed the jury that the evidence was not offered to show the bad character of, or prior crimes committed by, the defendant, but was offered to show the discord between the defendant and the victim and the defendant's state of mind toward the victim. See *Commonwealth* v. *Haley,* 363 Mass. 513, 524 (1973). As in *Haley, supra,* the evidence was connected adequately with the crime by evidence of intervening events. Although the presence of the defendant at the scene of the crime was supported by circumstantial evidence rather than by direct evidence as in *Haley,* we believe that the probative value of the testimony outweighed its possible inflammatory effect.

5. *Section 33E.* We have reviewed the evidence as required by G. L. c. 278, § 33E, as amended. Justice does not require a new trial or the entry of a verdict of a lesser degree of guilt than that returned by the jury.

*Judgments affirmed.*