COMMONWEALTH *vs.* HIPALITO DELVALLE
(and a companion case[1]).

Suffolk.    November 7, 1966. — December 16, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Hearsay, Of state of mind, Of threats, Relevancy and materiality.

At the trial of indictments for murder of a man who died as the result of a fall from the window of an apartment which he occupied with the defendants, testimony by witnesses for the Commonwealth that two days before the fall the victim had told them that the defendants had then threatened him with death was inadmissible as hearsay; a contention that the testimony was admissible for the purpose of showing a state of mind of the victim prior to his death inconsistent with a suicidal state of mind suggested by the defendants was without merit where the testimony was not offered nor admitted for that limited purpose, and also since it was not relevant to show such inconsistent state of mind. [491–493]

At the trial of a criminal case, evidence of threats by the defendant to the victim preceding the crime can properly come only from one who heard or witnessed the threats. [495]

---

[1] Commonwealth *vs.* Luis B. Morales.

INDICTMENTS found and returned in the Superior Court on September 9, 1965.

The cases were tried before *Smith,* J.

*Lazar Lowinger, & Manuel N. Zapata* of New York, for the defendants.

*Joseph R. Nolan,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   These are appeals under the provisions of G. L. c. 278, §§ 33A–33G.   The defendants were indicted for, and found guilty of, second degree murder and were sentenced to life imprisonment.   The cases come to us with a summary of the record, a transcript of the evidence, and assignments of error.   We have reviewed the evidence. There was testimony as follows.

On July 23, 1965, Victor Rodriquez died as the result of a fall from the window of a fourth floor apartment which he occupied in company with the two defendants.   The window was twenty-one inches in width.   Two witnesses gave evidence that they saw two men push the deceased from the window and one of them identified the defendant Morales in connection with the incident.   Two other witnesses for the Commonwealth testified that on July 21 Rodriquez had told them that the defendants had on that day threatened him with death.   The defendants on the stand denied that they had threatened the deceased or that they had pushed him from the window.   In addition, they testified that a close relationship existed between the deceased and themselves, that Rodriquez was subject to fits of depression, that he had on various occasions alleged that people were trying to kill him, and that he had attempted suicide prior to July 23, 1965.   This testimony was corroborated by other witnesses testifying in their behalf.   The defendants and the deceased were natives of Puerto Rico and spoke little English.

We deal only with the defendants' assignments of error numbered 3, 4, 5 and 7, the disposition of which is in our view determinative of these appeals.   These several assignments relate to the admission of evidence of the threats which Rodriquez told the witness Pellegriti and another had

been made to him on July 21. Pellegriti, the manager at the restaurant where the deceased was employed, testified that on that day Rodriquez was nervous and agitated, and that he heard him claim that the defendants were threatening to kill him. Upon hearing this allegation, Pellegriti called the police. The witness Moran, a police officer, responded and heard from Rodriquez as interpreted by Pellegriti the claim of the threats to which Moran, as well as Pellegriti, testified. It is this evidence which is the principal object of attack in the brief and argument of the defendants. Its validity and effect were important, if not controlling. The case of the Commonwealth against Morales was largely circumstantial, and against DelValle entirely so.

The broad rule on hearsay evidence interdicts the admission of a statement made out of court which is offered to prove the truth of what it asserted. The theory which underlies exclusion is that with the declarant absent the trier of fact is forced to rely upon the declarant's memory, truthfulness, perception, and use of language not subject to cross-examination. Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv. L. Rev. 177, 177–179. See McCormick on Evidence, § 225, p. 460; Wigmore on Evidence (3d ed.) § 1362. Deep in the common law and embodied also in constitutional provision is the principle that one charged with crime has the right to be confronted by his accusers. *Commonwealth* v. *Slavski,* 245 Mass. 405, 414. *Pointer* v. *Texas,* 380 U. S. 400. *Douglas* v. *Alabama,* 380 U. S. 415. Under the hearsay rule Pellegriti's testimony was objectionable as hearsay, for its value was directly dependent on the credibility of Rodriquez. No witnesses actually heard the defendants threaten the life of, or saw them display any measure of hostility toward, the deceased. If Pellegriti's testimony was invalid, that of Moran was more so, for it was based on Pellegriti's interpretation of the deceased's declaration from Spanish into English.

However, the Commonwealth argues the admissibility of

the testimony of the threats under the exception to the hearsay rule relative to which this court has said that the ''state of mind or intent of a person, whenever material, may be shown by his declarations out of court.'' *Goldman, petitioner,* 331 Mass. 647, 651. *Lane* v. *Moore,* 151 Mass. 87, 89–90. *Commonwealth* v. *Howard,* 205 Mass. 128, 152. Wigmore on Evidence (3d ed.) §§ 1714, 1725, 1726. Cf. Anderson, Wharton's Criminal Evidence (12th ed.) § 289. See Rule 63 (12) of the Uniform Rules of Evidence in the Handbook of the Natl. Conf. of Commrs. on Uniform State Laws, 1953, pp. 197, 202. It relies heavily on *Commonwealth* v. *Trefethen,* 157 Mass. 180, where we held it to be error to exclude a statement of suicidal intent made by the deceased to a medium the day before she met death. We held the declaration admissible ''solely for the purpose of showing what the state of mind or intention of . . . [the deceased] was at the time'' the declaration was made and hence as an act from which the state of mind or intention might be inferred. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 188. On the authority of the *Trefethen* case, the Commonwealth might properly have tendered evidence of a mental state of the deceased inconsistent with suicide.

But the evidence of threats as it went in proceeded far beyond the mere rebuttal of suicidal intent. Contrary to the contention now advanced in the brief for the Commonwealth, the evidence of threats was introduced as part of the case in chief of the Commonwealth and could not have been considered by the jury as rebuttal, there being at the time of its introduction no evidence as yet from the defence of the suicidal tendencies of the deceased and hence nothing of this nature to rebut. Furthermore, the admission of the evidence was not accompanied by any instruction to the jury that the evidence was being introduced solely to show the deceased's state of mind prior to his death. These facts make it abundantly clear that this evidence was neither offered nor admitted for the limited purpose of showing the deceased's state of mind. Thus, it fulfilled the broad purpose of proving that threats on the deceased's life were

made by the defendants, and the jury were left to infer from this that the defendants desired his death and, in fact, accomplished it. See *Shepard* v. *United States,* 290 U. S. 96, 103.

There are additional considerations worthy of note. Had the evidence been offered in rebuttal and admitted with instructions limiting its use to show the deceased's mental state, the propriety of its admission would still be gravely doubtful. The evidence of threats did not show a state of mind inconsistent with the possibility of suicide. At best it demonstrated only a state of fear on the part of the deceased. It neither rebutted nor reinforced the theory of suicide. Conceivably fear could have driven the deceased to self-destruction. Conversely it might not have. On this point there is a blank record. Thus, evidence of the threats introduced solely to show the declarant's state of mind was immaterial. Furthermore, the admission of such evidence served to express the intent and subsequent action of the defendants, i.e., they wanted to kill the deceased, they so stated, and they did kill him. See *State* v. *Perelli,* 125 Conn. 321, 325; *State* v. *Kump,* 76 Wyo. 273, 284. To hold admissible evidence of threats to a deceased not witnessed by others would in effect permit the introduction of such declarations to prove their truth. Permitting this testimony under the narrow state of mind exception to the hearsay rule is to allow the exception to swallow the rule. For this reason the evidence should have been excluded.

We think this conclusion is in accord with the better reasoned authorities which do not allow the introduction of evidence of a deceased's declarations asserting the defendant's threats or other hostile conduct toward the deceased. *Shepard* v. *United States,* 290 U. S. 96. *Holland* v. *State,* 162 Ala. 5. *Montag* v. *The People,* 141 Ill. 75. *State* v. *Beeson,* 155 Iowa, 355. *Adams* v. *Commonwealth,* 274 Ky. 714. *State* v. *Bigham,* 133 S. C. 491. *State* v. *Kump,* 76 Wyo. 273. See *State* v. *Benson,* 346 Mo. 497; *People* v. *Trudeau,* 16 App. Div. 2d (N. Y.) 886, 887. The Uniform Rules of Evidence would probably also exclude such evi-

dence.[2]   California is the most significant authority that
has considered the hearsay question and reached a contrary
result on similar facts.   *People* v. *Merkouris,* 52 Cal. 2d 672,
682 ("[T]he fact that the victims feared defendant is rele-
vant because it is some evidence that they had reason to
fear him, that is, that there is a probability that the fear
had been aroused by the victims' knowledge of the conduct
of defendant indicating his intent to harm them rather than,
e.g., that the victims' fear was paranoid").   *People* v.
*Feasby,* 178 Cal. App. 2d 723.   *People* v. *Cooley,* 211 Cal.
App. 2d 173.   *People* v. *Finch,* 213 Cal. App. 2d 752.   *Peo-
ple* v. *Lewis,* 217 Cal. App. 2d 246.   *People* v. *Yuhas,* 222
Cal. App. 2d 61.   Cf. *People* v. *Hamilton,* 55 Cal. 2d 881,
noted in 110 U. of Pa. L. Rev. 743; *People* v. *Purvis,* 56 Cal.
2d 93.   See *Lowrey* v. *State,* 87 Okla. Crim. 313; *Karnes* v.
*Commonwealth,* 125 Va. 758; *State* v. *Bauers,* 25 Wash. 2d
825, noted in 22 Wash. L. Rev. 145.   However, the Califor-
nia Law Revision Commission has drafted a proposal to
overrule legislatively the *Merkouris* decision and those cases
following it which hold that a declarant's state of mind is
relevant to prove facts giving rise to inferences concerning
a defendant's motivation and acts.[3]   "These limitations are

---

[2] Rule 63 of the Uniform Rules of Evidence (Handbook of the Natl. Conf. of
Commrs. on Uniform State Laws, 1953, pp. 197, 202) provides in part: "Evi-
dence of a statement which is made other than by a witness while testifying at
the hearing offered to prove the truth of the matter stated is hearsay evidence
and inadmissible except: . . .

"(12) . . . Unless the judge finds it was made in bad faith, a statement
of the declarant's (a) then existing state of mind, emotion or physical sensa-
tion, including statements of intent, plan, motive, design, mental feeling, pain
and bodily health, . . . when such a mental or physical condition is in issue
or is relevant to prove or explain acts or conduct of the declarant . . . ."

[3] The California Law Revision Commission has proposed that Rule 63 (12)
of the Uniform Rules of Evidence be redrafted as follows:

"Evidence of a statement which is made other than by a witness while testi-
fying at the hearing and is offered to prove the truth of the matter stated is
hearsay evidence and is inadmissible except: . . .

"(12) Unless the judge finds it was made in bad faith, a statement of: . . .

"(b) A declarant who is unavailable as a witness as to his state of mind,
emotion or physical sensation at a time prior to the statement to prove such
prior state of mind, emotion or physical sensation when it is itself an issue in
the action or proceeding *but not to prove any fact other than such state of
mind, emotion or physical sensation*" (emphasis supplied).   Cal. Law Revision
Commn., Tent. Recommendation and a Study relating to the Uniform Rules of
Evidence (Article VIII. Hearsay Evidence) (1962) pp. 311, 324.

necessary to preserve the hearsay rule; without them statements of past events could be used as evidence of the occurrence of the events merely by a process of circuitous reasoning and the rule would be absorbed by the exception.'' Cal. Law Revision Commn., Tent. Recommendation and a Study relating to the Uniform Rules of Evidence (Article VIII. Hearsay Evidence) (1962) p. 326. See Maguire, Weinstein, Chadbourn and Mansfield, Cases and Materials on Evidence (5th ed.) 510–513.

In these circumstances we hold that evidence of threats preceding a crime can properly come only from one who heard or witnessed them. It is only such a witness whose evidence can be tested under cross-examination on all the factors which may give life and credence to the threats of which he tells. Therefore, it was error to allow Pellegriti to testify to the deceased's declarations relating to threats made by the defendants to the deceased two days before the latter met his death. A fortiori, Officer Moran's testimony was also inadmissible as hearsay.

*Judgments reversed and verdicts set aside.*