COMMONWEALTH *vs.* ROBERT L. BOND.

Suffolk.   October 14, 1983. — January 19, 1984.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Evidence,* Hearsay, Relevancy and materiality, State of mind. *Practice, Criminal,* Instructions to jury.

At the trial of a murder case it was error requiring reversal to admit testimony by a friend of the victim concerning threats made by the defendant to the victim which had not been witnessed by the friend. [397-400]

Permitting a witness at the trial of a murder case to answer the prosecutor's questions concerning her religious beliefs did not, in the circumstances, prejudice the defendant. [400-401]

The judge at the trial of a murder case was not required to instruct the jury on manslaughter where there was no evidence to permit such a finding. [401]

INDICTMENT found and returned in the Superior Court Department on November 18, 1981.

The case was tried before *Irwin,* J.

*Robert L. Sheketoff* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

SMITH, J.   This is an appeal from a conviction of murder in the second degree.   The defendant raises three issues. He argues that (1) evidence of certain statements made by the victim about him to a third party should not have been admitted in evidence, (2) evidence of a witness's religious beliefs was admitted in error, and (3) the judge should have instructed the jury on manslaughter.

We summarize those portions of the evidence which are necessary to answer the defendant's contentions.   The defendant and the victim were acquainted and had been involved in a personal relationship for some time.   On October 23, 1981, between 9:00 and 9:30 P.M., the body of the victim

was discovered in the downstairs storage area of a building at 82 Walnut Street, Boston. She had been shot twice in the head. Earlier that evening, after receiving a telephone call from the defendant, she left her home in Dorchester and went to a political meeting at 88 Walnut Street. After she left the meeting she was seen near 82 Walnut Street arguing with a man identified by witnesses at the trial as the defendant. The victim was heard to say to the defendant, "Leave [me] alone" and "get away from [me]." They were then observed going into the basement of 82 Walnut Street. Gunshots were heard, and the defendant was observed leaving the building. At trial, the defendant's sole defense was that the witnesses had mistakenly identified him as being at the scene of the homicide.

With the above summary as background, we now discuss the issues raised by the defendant.

1. *Admission of certain hearsay testimony.* Fatimah Payne was called as a witness by the Commonwealth. She identified herself as a close friend and confidante of the victim, who had known her for thirty-four years. She was asked by the Commonwealth about statements made to her concerning an incident between the victim and the defendant that had occurred in late August, 1981. Over the defendant's objection she testified that she had been called by the victim's children and asked to come to the victim's house. Upon her arrival she was told of an incident that had just occurred.[1] She testified that she was told that the victim's ex-husband had arrived at the victim's home earlier in the day with money for one of the children's school clothes. The defendant arrived shortly thereafter and briefly spoke to the victim, who then said to her ex-husband, "Leave, he's got a knife." After the ex-husband and the children left the room the defendant locked the door. He then argued with the victim, slapped and punched her in the face, and threatened her with a knife. She started screaming to the children that he had a knife and was trying to hurt her. Eventually, the

---

[1] It is impossible to tell from the record the identity of the person or persons who related to the witness the story of the incident.

defendant was chased out of the house by the victim's children. The witness testified that while she was at the house she saw that the victim had a large black eye.

The witness further testified that she saw and talked to the victim every day, from the date of the incident until the Thursday prior to her death. Over the defendant's objection, the witness testified that the victim had told her that she was very nervous and afraid of the defendant and that he had even come to her place of employment. The victim had also told the witness that the defendant had encountered the victim at a bus stop and threatened to "off" her. Also, the witness testified that the victim had told her that the defendant had made threats to her concerning the victim's children and the witness. At no time did the witness testify to any statement made by the defendant to her (the witness), and there was no testimony from any other witness about the incident in late August, 1981, or about any threat allegedly made by the defendant to the victim.

The judge recognized that ordinarily the testimony of the witness would have been barred by the hearsay rule. He allowed the testimony in evidence, however, as an exception to the hearsay rule for the limited purpose of showing the victim's state of mind toward the defendant at the time the statements were made, and he so instructed the jury.

The state of mind exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant if it is relevant to a material issue in the case. *Commonwealth* v. *Borodine,* 371 Mass. 1, 7-9 (1976). Thus, if a defendant is tried for murder and as part of his defense claims that the deceased committed suicide, evidence is admissible that the victim had made recent statements, either consistent with suicidal intent, *Commonwealth* v. *Trefethen,* 157 Mass. 180, 188 (1892), or inconsistent with that intention, *Commonwealth* v. *Howard,* 205 Mass. 128, 152 (1910). Here, the Commonwealth argues that the testimony was admissible because it was relevant to the question of motive and cites *Commonwealth* v. *Borodine, supra,* and *Commonwealth* v. *Van Liew,* 14 Mass.

App. Ct. 662, 666-669 (1982), as authorities for its contention. But an examination of those cases, both involving murder prosecutions, does not support the admissibility of the hearsay evidence in this case.

In *Commonwealth* v. *Borodine, supra,* the court held that it was not error to allow in evidence statements made by the victim to others indicating that she had abandoned plans to marry the defendant and intended to end their relationship where the jury would have been warranted in inferring that the victim had told the defendant of her state of mind. The evidence was properly admitted because the victim's attitude toward the defendant was relevant to the question whether the defendant had a motive to kill her. Similarly, this court in *Commonwealth* v. *Van Liew, supra,* permitted the same type of evidence to be admitted for the same reason.[2] In the present case the evidence offered to show the victim's state of mind is markedly dissimilar from the evidence in *Commonwealth* v. *Borodine, supra,* and *Commonwealth* v. *Van Liew, supra.* Here, the hearsay evidence consists of threats by the defendant toward the victim and testimony that the victim feared the defendant. None of this evidence was material to any issue in the case. "[E]vidence of threats preceding a crime can properly come only from one who heard or witnessed them." *Commonwealth* v. *DelValle,* 351 Mass. 489, 495 (1966). The admission of such evidence is highly prejudicial because it tends to show the state of the defendant's mind, not that of the declarant. Thus, "[t]o hold admissible evidence of threats to a deceased not witnessed by others would in effect permit the introduction of such declarations to prove their truth. Permitting this testimony under the narrow state of mind exception to the hearsay rule is to allow the exception to swallow

---

[2] In *Van Liew,* statements made by the victim to his wife were ruled admissible. The content of the testimony was that the victim told her that he had seen the defendant with a woman and that he told the defendant that if he did not pay him money owed to him, the victim would inform the defendant's live-in companion of the other woman. The court ruled that from the evidence the jury could infer that the defendant suspected that the victim did inform the defendant's companion of the other woman.

the rule." *Id.* at 493. Therefore, the testimony of Fatimah Payne as to the statements of the victim was inadmissible. The limiting instructions cannot be viewed as curative, as the evidence was inadmissible in the first instance. Moreover, in homicide cases, and specifically in the context of state of mind testimony which is admissible, "Courts have expressly recognized that the limiting instruction is inadequate where the prejudicial dangers far outweigh a tenuous relevance to the issues presented in the case and where it is simply unrealistic to believe that the refined distinctions demanded by the limiting instruction can be faithfully maintained by any jury." *United States* v. *Brown,* 490 F.2d 758, 765 (D.C. Cir. 1974). Also see *Commonwealth* v. *DelValle,* 351 Mass. at 493. In this case the danger to the defendant from the inadmissible evidence was great, and therefore we reverse.

2. *Other issues.* We shall briefly discuss the other issues which may surface at retrial.

a. *Questions as to a witness's religious beliefs.* At the outset of Fatimah Payne's testimony, the prosecutor noted that she was wearing what appeared to be a turban. She acknowledged that it was indeed a turban. The prosecutor then asked if she was a follower of a particular religious belief, and she answered in the affirmative. She was then asked what particular religion she belonged to and, over the defendant's objection, stated that she was a "Sunni Muslim." The defendant contends that it was error for the court to allow the answer because it was irrelevant and prejudicial. We disagree with the defendant. The prosecutor's questions can hardly be characterized as an attempt to "sweep jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Mahdi,* 388 Mass. 679, 693 (1983), quoting from *Commonwealth* v. *Perry,* 254 Mass. 520, 531 (1926). It is obvious that the purpose of the questions was to attempt to furnish an explanation for the witness's distinctive headdress. Contrast *Commonwealth* v. *Mahdi, supra* at 693 ("[t]he only apparent purpose of such questioning was to inject racial hatred into the trial"). In addition,

the prosecutor here did not question the witness concerning the beliefs and teachings of her religion, nor did he refer to or characterize the religion or its tenets in his closing argument. Compare *Commonwealth* v. *Mahdi, supra* at 691-693. We agree that the question as to the witness's religion was irrelevant but hold that it was not prejudicial.

b. *Judge's failure to charge on manslaughter.* The defendant contends that the judge erred in refusing to instruct the jury on manslaughter. There was no error. It has been repeatedly held that "if any view of the evidence in a case would permit a finding of manslaughter rather than murder, a manslaughter charge should be given." *Commonwealth* v. *Walden,* 380 Mass. 724, 726 (1980). Also see *Commonwealth* v. *Burke,* 376 Mass. 539, 542 (1978); *Commonwealth* v. *Johnson,* 379 Mass. 177, 179-180 (1979). A judge "is not required, however, to charge on an hypothesis which is not supported by evidence." *Commonwealth* v. *Caine,* 366 Mass. 366, 374 (1974), quoting from *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971). There was no evidence which would have warranted a finding of manslaughter, and therefore a jury instruction was not required. *Commonwealth* v. *Benoit,* 389 Mass. 411, 425 (1983).

*Judgment reversed.*

*Verdict set aside.*