COMMONWEALTH *vs.* KEVIN G. SMITH. March 12, 1985. *Practice, Criminal,* New trial, Discovery, Argument by prosecutor, Hearing. *Witness,* Bias.

Although acquitted by a jury on the major indictment of armed assault with intent to murder,[1] the defendant, Kevin G. Smith, was convicted of unarmed robbery, assault and battery by means of a dangerous weapon, unlawfully carrying a firearm, and use of a motor vehicle without authority.

Smith's defense was that he was not present at, let alone involved with, the incident from which the indictments flowed. That incident involved a police chase of a car believed to be stolen and an ensuing struggle between the driver and a pursuing police officer. During that struggle, the suspect, whom the police officer was trying to arrest, managed to get hold of the policeman's service revolver and fired three shots at the officer at close range. Two bullets hit their mark.

At trial the injured officer identified Smith as his assailant. Several eyewitnesses to the aborted arrest and shooting testified that they knew Smith and that he was not the man involved in the fight. With identification a pivotal issue, the testimony of Charles "Slick" Williams took on a signal importance. Williams testified that he knew the defendant Smith and that Smith had told him he thought he had "shot a cop." Williams further testified that: the next day he saw the defendant carrying a gun; later that day the defendant said he had given the gun to a friend named Gerald; the following day, Williams saw Gerald carrying a .38 snubnose revolver with oversized grips. The disarmed officer had described his weapon as a ".38 caliber Smith & Wesson two-inch snubnose revolver" with "larger grips."

1. *Inducements to Williams.* The principal ground of appeal is that Smith was entitled to a new trial because the Commonwealth failed to disclose inducements made to Williams for his evidence. In a pretrial con-

---

[1] The judge also charged the jury on assault with intent to kill as a lesser offense under armed assault with intent to murder. As to the lesser charge, the jury returned no verdict and, as a practical matter, the defendant stands acquitted of it. The clerk should furnish the jury with a verdict slip as to each offense on which the judge has instructed the jury. See Mass.R.Crim.P. 27(a), 378 Mass. 897 (1979).

ference report the Commonwealth had agreed to disclose any "promises, rewards, and inducements to Commonwealth witnesses." None were reported. When defense counsel learned that Williams would testify for the government, he specifically renewed inquiry about whether the Commonwealth had promised Williams anything. The answer was "no." When Williams, on the stand, denied having received any inducements, the prosecutor did not come forward with anything to the contrary.

In support of the defendant's motion for a new trial, successor counsel offered two affidavits. The first was that of Charles Yetman, a prisoner who said he had ridden in a prisoners' van with Williams, after both had been to the Suffolk County courthouse. Yetman's affidavit had Williams saying that, if he [Williams] testified against Smith, his own charges would be taken care of and he would get "the street." The second affidavit was made by successor counsel and described events which made the existence of a bargain between Williams and the prosecution distinctly plausible. In summary, the government, on November 10, 1981, requested that Williams be held on high cash bail. On November 18, 1981, the day one of Williams's cases was scheduled for trial, that trial was postponed to December, 1981, and the Commonwealth asked for a writ of habeas corpus to enable Williams to appear in court on November 25, 1981, in another of his cases. On November 19, 1981, Williams testified in the Smith case. At his scheduled appearance on November 25th, Williams's lawyer announced an agreement with the Commonwealth for reduction of bail to $1,000 surety or $100 cash. That was approved by the presiding judge. On January 20, 1982, before a different judge, counsel for Williams announced an agreement with the government for reduction of one of the indictments pending against Williams to a lesser offense, a sentence of four to five years at M.C.I., Walpole, to be suspended, and the filing of another charge. This was approved by the judge. Williams had "gotten the street."

Yet two assistant district attorneys, one the prosecutor in the Smith case and the other the prosecutor in the Williams case, made affidavits which stated unqualifiedly that no promises or inducements had been made to Williams by the district attorney's office. Both affidavits further disclaimed knowledge of any such promise by any other representative of the government, including police. The affidavits were broad and explicit enough to negate Williams's having been given expectation of leniency. See *Commonwealth* v. *Gilday*, 382 Mass. 166, 175-177 (1980); *Commonwealth* v. *Collins*, 386 Mass. 1, 12 (1982). A third affidavit, by Williams's lawyer, similarly disclaimed any promises or inducements in return for testimony of Williams. We do not fault the trial judge for deciding to give greater weight to the sworn statements of the three officers of the court than to the inferences he could draw from the handling of Williams's bail and sentencing.

In acting on the motion for a new trial, the judge could properly consider the novelty of the material proffered. Cf. *Commonwealth* v. *Markham*,

10 Mass. App. Ct. 651, 653-654 & n.1 (1980). Yetman's account of his conversation with Williams in the van was known to the defense at trial. It served as the basis for a portion of the cross-examination of Williams. The defense elected not to call Yetman as a witness at trial, the defendant's memorandum in support of his motion for a new trial explains, because Yetman had an impressively long criminal record,[2] That tactical decision hardly justifies wheeling Yetman's version up again in affidavit form after the trial as newly discovered evidence. Similarly, defense counsel cross-examined Williams at length about his expectation of release in exchange for his evidence. That Williams's testimony was tainted was a major focus of defense counsel's closing argument: "What happened? He makes the taped statement, and he gets let go. . . . They bring him into court. And where he was held on a $100 bail, his bail is raised to $20,000 . . . . [T]his guy is a guy that would do anything to stay out of jail. He's testified to that." In some measure, defense counsel's argument touched inferentially on the explanation later given by the government for the bail fluctuations: bail on Williams was increased to assure his presence as a witness in the Smith case. For its part, the prosecution in closing insisted that there had been no deal with Williams.

A motion for a new trial is directed to the sound discretion of the trial judge, informed by the statutory standard. *Blaikie* v. *District Attorney for the Suffolk Dist.*, 375 Mass. 613, 618 (1978). *Commonwealth* v. *Markham*, 10 Mass. App. Ct. at 651. On review, the decision of a trial judge who denies a motion for a new trial based on newly discovered evidence "will not — assuming no error of law in the application of an improper standard — be reversed" unless a survey of the whole case shows that his decision will result in manifest injustice. *Ibid*. "Where, as here, the motion judge also sat as the trial judge, he his entitled to use his knowledge of the trial and his evaluation of the witnesses and evidence at trial to assess the nature and value of the evidence presented on the motion." *Id*. at 652. Applying those criteria, we are not prepared to say that the facts brought to the judge's attention by defense counsel compelled the conclusion that the government had played the defendant false. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 255 & n.4, and 259-260 (1981).

It was open to the judge to rule on the motion for a new trial on the basis of the facts stated in the affidavits of the parties, unless the motion raised a substantial issue requiring an evidentiary hearing. Mass.R.Crim.P. 30(c)(3), 378 Mass. 901 (1979). The decision whether it is necessary to hold an evidentiary hearing is left largely to the sound discretion of the judge. *Commonwealth* v. *Stewart, supra* at 257. *Commonwealth* v. *Saarela*,

---

[2] So did Williams, and Smith's lawyer did not miss the opportunity to urge the jury that they should pay no attention to the testimony of a witness who had been convicted of forgery, receiving stolen property, armed robbery, possession of heroin with intent to distribute, and assault and battery by means of a dangerous weapon.

15 Mass. App. Ct. 403, 406 (1983). On a substantially similar mix of affidavits and circumstantial evidence the court in *Stewart* found that determination of a motion for a new trial on affidavits and without a hearing was appropriate; i.e., the material had not raised a substantial issue necessitating a hearing. As to the preference, absent a substantial issue, for disposing of motions for postconviction relief on affidavit, see *Commonwealth* v. *Stewart, supra* at 260, and Mass.R.Crim.P. 30, Reporters' Notes to Mass. R. Crim. P. 30, Mass. Ann. Laws, Rules of Criminal Procedure at 484-485 (1979). Compare *Commonwealth* v. *Saarela,* 15 Mass. App. Ct. at 406-407. The degree to which the grounds raised in support of the new trial motion had been explored at trial, as well as their seriousness and the adequacy of the defendant's showing, entered into the calculus of whether the issues put forth were substantial. See Smith, Criminal Practice and Procedure § 2087 (2d ed. 1983).

2. *Claims of prosecutorial error.* The prosecutor in his closing argument referred more than was appropriate to concern for the victim. That, of course, was not the issue before the jury; the issue was who had injured the victim. However, defense counsel agreed that the improprieties in the prosecutor's argument were to be corrected in the judge's charge. The judge undertook to do so and the defense made no objection to the charge. When the prosecutor argued that two defense witnesses had testified out of fear, there was no adequate basis in the evidence for his line of argument. As to the first witness, the prosecutor was promptly corrected by the judge; as to the second, no such correction was requested by defense counsel, who indicated that he was satisfied after the judge, at a bench conference, had told the prosecutor to abandon the point. Read as a whole, the prosecutor's closing argument did not create undue prejudice.

*Judgments affirmed.*

*Orders denying motion for
new trial affirmed.*

*Eric Brandt* for the defendant.
*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.