## COMMONWEALTH vs. LEONARD J. PARADISO.

Suffolk. December 16, 1986. — May 6, 1987.

Present: WARNER, CUTTER, & FINE, JJ.

*Constitutional Law*, Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Argument by prosecutor, New trial. *Witness,* Bias.

Where in a criminal case there was no basis for the judge to suppress evidence of the defendant's admissions to a fellow jail inmate on the ground that the inmate was an undisclosed government informant, defense counsel's failure to move to suppress the statements did not constitute ineffective assistance of counsel. [144-146]

Where in a criminal case the judge properly ruled at a pretrial hearing on a motion to suppress evidence that there was no attorney-client privilege requiring suppression of the defendant's admissions, defense counsel's failure to object to the evidence on the same ground at trial did not constitute ineffective assistance of counsel. [146-148]

A criminal defendant was not denied effective assistance of counsel by his attorney's failure to object to a prosecutor's closing argument that, viewed in its entirety, appropriately addressed the issues of credibility of the witnesses and was otherwise not improper. [148-150]

Where the record of a criminal trial revealed no error of a constitutional magnitude or other ground likely to result in a manifest injustice or miscarriage of justice, the trial judge did not abuse his discretion in denying the defendant an evidentiary hearing on his motion for a new trial and in denying that motion. [150-151]

There was no error in the denial of a criminal defendant's motion for a new trial on the ground that the prosecution failed to disclose inducements for its witness's testimony, where the Commonwealth at trial frankly disclosed its discussions with the witness, where defense counsel at pretrial proceedings and at trial thoroughly explored the witness's motives for testifying, and where the trial judge, in denying the motion for a new trial, properly limited his consideration of the witness's motives to those existing at the time of trial. [151-152]

Where affidavits submitted in support of a criminal defendant's motion for a new trial were vague, based in part on hearsay and contained no information unavailable at the time of the defendant's trial for murder and rape, the trial judge correctly denied the motion. [152-153].

INDICTMENTS found and returned in the Superior Court Department on June 28, 1982, and June 22, 1983, respectively.

The cases were tried before *Roger J. Donahue,* J., and a motion for a new trial was considered by him.

*Frank L. Bruno* for the defendant.

*Margaret Steen Melville,* Assistant District Attorney (*Ellen Donahue,* Assistant District Attorney, *& Timothy Burke,* Special Assistant District Attorney, with her) for the Commonwealth.

CUTTER, J. Paradiso was indicted for the rape and murder, on August 12, 1979, of Marie B. Iannuzzi (the victim). On July 21, 1984, Paradiso was found guilty of second-degree murder and of assault with intent to rape. From his life sentence on the murder conviction and from his consecutive sentence of eighteen to twenty years on the other conviction, Paradiso appealed. The judge denied a motion for a new trial in February, 1986, and subsequently denied a motion to reconsider. An appeal from those denials is also before us. The appeals have been consolidated.

On Saturday, August 11, 1979, the victim had gone to a wedding reception. There she and her "boyfriend," David Doyle, had an argument. He went home. She then went to a party at the house of the bridegroom's family, which Paradiso also attended. The victim drank at that party. Later a witness saw her drinking at a bar in East Boston about 11 P.M. and also sometime after that the witness saw her there talking with Paradiso. Another witness saw the victim leave with Paradiso. The victim's body was discovered on Sunday, August 12, at the edge of a tidal river in Saugus. An autopsy revealed that she had suffered some bruises, that intact sperm remained in her vagina and that she probably had died in the early morning of the twelfth.

Even prior to the indictments suspicion was directed to Paradiso. The latter (and his "girlfriend," Candace Weyant) each told a story (but see note 2, *infra*) to the police essentially that Weyant had driven the victim from the party to the East Boston bar, that Weyant then had returned to the party, that later she, Paradiso, and the victim all had been at the bar at the same time, that the victim left the bar finally about the

same time as did Paradiso and Weyant, that the victim declined a ride home, and that Paradiso and Weyant went to Paradiso's home for a short time and then Weyant went home. Other relevant evidence is discussed below in connection with individual issues argued on appeal.[1]

1. Paradiso's present counsel's brief raises as its principal contention that Paradiso was denied the effective assistance of trial counsel. See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96-99 (1974); *Commonwealth* v. *Fuller,* 394 Mass. 251, 255-261 (1985). A brief filed by Paradiso also discusses this issue.

(a) Paradiso's present counsel first contends that trial counsel should have prevented the introduction in evidence of incriminating statements made by Paradiso to one Robert Bond in late 1982, while both were being held at Charles Street jail. Bond was then awaiting trial for a wholly unrelated murder and was convicted of second-degree murder while Paradiso was still at the jail, a conviction later reversed. See *Commonwealth* v. *Bond,* 17 Mass. App. Ct. 396, *S.C.* 391 Mass. 1103 (1984). At the time of Paradiso's trial in 1984, Bond was awaiting retrial. Bond and Paradiso had known each other in 1975 when they had been serving sentences for earlier convictios at M.C.I., Cedar Junction. Bond testified that, after his conviction on December 13, 1982, he had numerous conversations at Charles Street jail with Paradiso in which Paradiso admitted the murder of the victim and of another woman and told Bond a story which varied in important respects from the account given by both Paradiso and Weyant to the police, already described above. Bond's different account is summarized in the margin.[2]

---

[1] Paradiso was not indicted for murder until June, 1982. Shortly thereafter an officer went to arrest him at the Weyant home in Revere. After advising Pardiso of his Miranda rights, the officer inquired, "Were you expecting to be arrested for this? . . . You don't seem very surprised to see me." Paradiso replied, "I've been expecting this for three years."

[2] Bond's testimony reported Paradiso as having told Bond that he (Paradiso) had taken Weyant home at some time in the evening of August 11 before 11 P.M. and then had returned alone (in Weyant's automobile) to the East Boston bar. Paradiso reported to Bond engaging there in conversation and drinking with the victim until they both left the bar together

Paradiso now claims that his trial counsel should have tried by pretrial motion to suppress Bond's testimony. The contention is that Bond was acting as a government informant when he received Paradiso's admissions. The evidence permitted the conclusion beyond a reasonable doubt that Bond had submitted the information to which he later testified without solicitation from any prosecutor or any prearrangement with any representative of the Commonwealth to secure the information from Paradiso. Bond could be found to have been "willing to furnish . . . information without any instructions from the Government. Although . . . [he] undoubtedly knew that the information he secured would be useful and accepted by the Government . . . this does not convert him into a government agent." See *United States* v. *Van Scoy,* 654 F.2d. 257, 259-261 (3d Cir.), cert. denied, 454 U.S. 1126 (1981). In the present situation the mere acceptance of inculpatory information from a fellow jail inmate did not turn Bond into a government agent or informant. Cases like *Massiah* v. *United States,* 377 U.S. 201, 202-203, 206 (1964); *United States* v. *Henry,* 447 U.S. 264, 266, 274-275, 276 (Justice Powell, concurring), see also 277-302 (Justices Blackmun and Rehnquist, dissenting) (1980); and *Maine* v. *Moulton,* 106 S.Ct. 477, 484-490 (1985), are clearly distinguishable as involving undisclosed agents of the prosecution. See, for a decision in result consistent with our view, *Commonwealth* v. *Rodwell,* 394 Mass. 694, 698-699 (1985), a case which (at 698) indicates that *subsequent* benefits (as to his place of confinement and other procedural matters) received by Bond have "little, if any, relevance to the question whether

about 1 A.M. Bond's account of what happened thereafter went into detail about Paradiso's efforts to seduce the victim, his intercourse with her, his admission of having choked her to death with her own scarf, and leaving her body where it was found. Bond reported that Paradiso described to him in detail (a) the efforts he and Weyant made that night to devise a statement to be made to the police by each of them and (b) the likelihood that the victim's boyfriend, Doyle, would be and remain the principal object of police suspicion. There was suggestion in Bond's testimony that one motive in reporting to the prosecutors Paradiso's admission may have been to prevent Doyle from "go[ing] to jail for something he didn't do." Doyle testified at Paradiso's trial, called by the defense. He was subjected to a vigorous questioning by Paradiso's trial counsel.

. . . [Bond] was a government agent at the times he and"
Paradiso spoke at Charles Street jail. These matters were fully
explored at trial during the defense cross-examination of Bond.

In *Commonwealth* v. *Festa,* 388 Mass. 513, 516 (1983),
and in *Commonwealth* v. *Boutwell,* 21 Mass. App. Ct. 201,
207-209 (1985), it was held that the failure of an attorney to
file a particular motion or motions involves no violation of the
*Saferian* standard (366 Mass. at 96) where the record does not
disclose any basis for filing such a motion. We think that is
the situation in the present case. Defense counsel could have
had no reasonable expectation of suppressing or excluding
Bond's testimony.

(b) Despite contentions to the contrary for Paradiso, his trial
counsel did attempt (by a pretrial motion) to suppress the tes-
timony of Ralph A. Pisa about an admission made to Pisa by
Paradiso, principally on the ground that the admission was
subject to an attorney-client privilege. We conclude that what
was done did not constitute ineffective assistance of counsel.

Paradiso and Pisa had met while each of them was serving
a sentence at M.C.I., Norfolk, in September, 1976. At that
time, they had many conversations. Pisa, who had for himself
and others become somewhat proficient in criminal law matters
(see *Commonwealth* v. *Pisa,* 372 Mass. 590, cert. denied, 434
U.S. 869 [1977]; *Pisa* v. *Commonwealth,* 378 Mass. 724
[1979]; *Commonwealth* v. *Pisa,* 384 Mass. 362 [1981]), pre-
pared some motions for Paradiso (about 1976) in connection
with an appeal from a conviction for which Paradiso was then
confined. Pisa, himself, had been represented in at least one
of his appeals by a lawyer, Mr. John Cavicchi, for whom, in
other cases, Pisa had done some research and brief writing for
compensation. Pisa had referred to Mr. Cavicchi other inmates
who were looking for a lawyer, but for this Mr. Cavicchi did
not pay him. It was stated at the motion hearing in March,
1984, that Mr. Cavicchi had represented Pisa for seven years
and had been attorney for Paradiso in the early stages of the
investigation of this murder, but had never entered an appear-
ance for Paradiso after his arraignment.

The principal conversation between Pisa and Paradiso mentioned at trial took place on December 24, 1979. Paradiso was then on parole and Pisa was on a short furlough from his earlier sentence. Pisa testified that on that afternoon he, his wife, and a son had gone to Mr. Cavicchi's house in East Boston to take him some gifts. While they were in conversation with members of the Cavicchi family, Paradiso came in with a bucket of fish and lobsters as a gift for Mr. Cavicchi and his family.

Paradiso, when he left, asked Pisa to go to the door with him to look at his truck. At the door, Paradiso asked Pisa for help with respect "to an indictment that he was going to receive" in the victim's case. Paradiso said "that he had short money" and wanted Pisa's help in getting Mr. Cavicchi to represent him. Pisa replied, "You'd have to peddle . . . a lot of fish to get a good attorney." Paradiso answered, "This is no joke. I killed the Iannuzzi broad, and I'm in serious trouble and I need representation . . . . It's an easy case, and there's no witnesses . . . . [I]t should be simple to handle." Pisa said he "would do what [he] could." In January, 1980, Paradiso called Pisa (by then back in confinement serving his sentence) to tell him that he had consumed a "few drinks" on Christmas Eve. He reminded Pisa that while in jail he "had a family out there" and "should keep his mouth shut" about the Iannuzzi case.[3]

Pisa's testimony at trial in July, 1984, was very much the same as his pretrial testimony (summarized by the judge, see

---

[3] The trial judge in a pretrial decision of March 13, 1984, denied the Commonwealth's motion to admit (to prove Paradiso's operating methods) evidence of other somewhat similar assaults by him in 1972, 1973, and 1980. See, e.g., *Commonwealth* v. *Paradiso*, 368 Mass. 205, 206-207 (1975). In that decision he referred to Pisa's testimony before him at the preceding motion hearing. The judge said in part: "[Pisa] testified that, in substance . . . [Paradiso] told him that he (Paradiso) had killed Marie Iannuzzi . . . . This information was volunteered [to Pisa] by . . . [Paradiso], and . . . [Pisa] was not acting in any way was an investigator or aid to any attorney at the time of each conversation. . . . [Pisa made contact with] . the District Attorney's office in Middlesex County, and thereafter this information was passed . . . to the Suffolk District Attorney's office. Much of the testimony of . . . [Pisa] may be admissible at the trial of this case (Iannuzzi), such as admissions, familiarity with areas, . . . [Paradiso's] motive (fear of incarceration), and so forth."

note 3). The conclusions of the judge noted in his decision of March 13, 1984, were warranted by the trial testimony as well as by the pretrial motion testimony, despite an extended, careful cross-examination of Pisa by Paradiso's then counsel. There was no attorney-client privilege involved to protect the disclosure made by Paradiso to Pisa on December 24, 1979. No evidence disclosed any representation of Paradiso at that time by Pisa (not a member of the bar), either as a "jail house" lawyer or as a quasi-paralegal assisting Mr. Cavicchi or any other lawyer with respect to Paradiso's defense in this case, on which no indictment then was pending. The social meeting on December 24 at Mr. Cavicchi's house cannot reasonably be stretched (on this record) into lawyer-client representation. Paradiso (then on parole) could have asked Mr. Cavicchi directly to represent him instead of trying to persuade Pisa (with Mr. Cavicchi not present) to induce Mr. Cavicchi to represent Paradiso for a small fee.[4] For the policy of confining the attorney-client privilege to private disclosures to attorneys-at-law, see *Foster* v. *Hall*, 12 Pick. 89, 93, 98 (1831); *Barnes* v. *Harris*, 7 Cush. 576, 577-578 (1851); Liacos, Massachusetts Evidence, 182-186, especially at 183-184 (5th ed. 1981); 8 Wigmore, Evidence, §§ 2300-2301 (McNaughton rev. 1961 & Supp. 1986). See also *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775-776 (1979); *State* v. *Spell*, 399 So.2d 551, 556-557 (La. 1981). Related discussion appears in part 3 of this opinion, *infra*.

(c) It is argued that the prosecutor's summation included remarks which went beyond "acceptable argument." There was no objection by defense trial counsel to the prosecutor's argument beyond a statement during the post argument bench conference, where defense trial counsel said, "I certainly find no fault with my brother's argument. . . . [W]hile I'm agreeing with . . . [the prosecutor] that the . . . [victim's] family is entitled to justice . . ., I have seen instructions where . . . a dispassionate

---

[4] At a pretrial hearing on March 12, 1984, Pisa testified at length. The judge, who heard Pisa at that motion hearing and at trial, then was made fully aware of the fact that Mr. Cavicchi had been representing Paradiso during the summer of 1979, but the present record does not show that this representation was continuing on Christmas Eve, 1979.

verdict is asked for by a trial judge." Later he requested that the jury "be instructed that the verdict should be upon the evidence and not upon any passion or emotions." The trial judge (without objection from the prosecutor) in fact gave such instructions early in his charge, emphatically stating what he also had told the jury shortly before the summations, that the attorneys' openings and summations were not evidence. In his charge he added that the jury must decide the case "without sympathy or favor to one side or the other . . . ." He added, "You must be objective. You must find your facts from the evidence and nothing else."[5]

The assistant district attorney's summation largely was devoted to the credibility of the significant witnesses in a case where at least one principal issue related to the credibility (1) of Weyant, whose testimony, if believed, would have established that she was with Paradiso until 2 A.M. on Sunday, August 12, 1979, and (2) of Bond, whose testimony about Paradiso's 1982 disclosures to him at the Charles Street jail contained admissions of detailed facts which Bond (as this record strongly indicates) in all probability could not have learned from any other source than Paradiso himself.

Paradiso's present attorney picks out of context from the prosecutor's argument isolated passages as the basis of his contention that the summation was improper. As parts of the prosecutor's whole analysis of the evidence (particularly that bearing upon the relative credibility to be accorded by the jury to the testimony of Bond and to that of Weyant), the arguments were appropriate.[6]

---

[5] The judge commented at the bench conference which followed the summations that he had "listened to both . . . arguments . . . [and] thought that they were both good . . . ."

[6] The Commonwealth argues that Paradiso's lawyer's failure to object to the prosecutor's summation was a tactical decision, not to be reversed on appeal unless his violation of duty was both "substantial and prejudical." *Commonwealth* v. *Adams,* 374 Mass. 722, 729 (1978). *Commonwealth* v. *Bertrand,* 385 Mass. 356, 368 (1982). Defense trial counsel, indeed, may have thought that to request comment by the judge on minor details of the summation might reemphasize those points to Paradiso's disadvantage. See *Commonwealth* v. *Fredette,* 396 Mass. 455, 466 (1985).

We perceive no likelihood, viewing the prosecutor's summation as a whole, that the jury would have been misled into thinking the prosecutor's statements amounted to more than a contention that, on the evidence the jury had heard, they should conclude that certain witnesses called by the defense were lying and that witnesses called by the prosecution should be regarded as credible. See *Commonwealth* v. *Smith,* 387 Mass. 900, 906-907 (1983). See also concurring opinion in *Commonwealth* v. *Earltop,* 372 Mass. 199, 206 (1977). We do not regard the prosecutor's contentions as implying his personal knowledge of matters in evidence referred to by him. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 378-379 (1978). This summation has not been shown to have been unfair, or to have been an improper appeal to sympathy for the victim and her family. See and compare *Commonwealth* v. *Johnson,* 374 Mass. 453, 458-460 (1978). See also the careful analysis in *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 271-277 (1982).[7] Viewed in its entirety, this prosecutor's summation was fairly appraised by the trial judge as "good." It was not ineffective assistance on the part of the defense trial counsel for him (1) to make no further comment on the prosecutor's argument than he did, or (2) to refrain from asking for a mistrial.

2. In his brief Paradiso contends that he should have been granted a new trial and also an evidentiary hearing on his motion for a new trial. We perceive no respect in which the original trial was infected with any constitutional error. See *Commonwealth* v. *Sullivan,* 385 Mass. 497, 503 (1982). Thus we treat the issues of (a) what evidentiary hearing should be granted and (b) the denial of a new trial as matters within the sound discretion of the motion judge, also the trial judge, who was thoroughly familiar with all phases of the case in 1984

---

[7] The whole situation should be considered on principles mentioned in *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 878 (1984). There it was said that a prosecutor's conduct should be evaluated "in light of the entire trial" and (at 884-885) his summation "must be considered in the context of . . . [his] entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." See, for a recent discussion of the considerations which should be used in appraising a closing argument, *Commonwealth* v. *Kozec,* 399 Mass. 514, 516-524 (1987).

and thereafter. See *Commonwealth* v. *Toney,* 385 Mass. 575, 579 (1982), and cases collected in Smith, Criminal Practice and Procedure, §§ 2065-2068 (2d ed. 1983 & Supp. 1986). See also *Commonwealth* v. *Smith,* 19 Mass. App. Ct. 997, 998-1000 (1985); *Commonwealth* v. *Leavitt,* 21 Mass. App. Ct. 84, 85-86 (1985). This record (including all affidavits) reveals that no ground has been advanced which, in the absence of a new trial, would be likely to result in manifest injustice to Paradiso or in any miscarriage of justice.

3. One contention in behalf of Paradiso is that the prosecution failed to disclose at trial the inducements which might have led Pisa to testify as he did. As had been stated, Pisa was cross-examined diligently at trial by defense counsel on the matter of inducements to him.

The Commonwealth very frankly disclosed at trial its prior discussions with Pisa. Compare the conduct adversely criticized in *Commonwealth* v. *Collins,* 386 Mass. 1, 11-15 (1982), and in *Commonwealth* v. *Johnson,* 21 Mass. App. Ct. 28, 40-42 (1985). It was known, of course, at trial in July, 1984, that, after Pisa testified at the motion to suppress on March 12, 1984, he had been released from custody the next day pending a decision on his own motion for a new trial.[8] Pisa at trial denied that any promises had been made to induce his testimony, although he hoped for favorable treatment. The assistant district attorney dealing with Pisa's motions for a new trial in his former case was a witness at Paradiso's trial in July, 1984. Then he testified that Pisa had been told prior to the pretrial hearing on March 12, 1984, that the district attorney's office "would not reconsider . . . [its] position with respect to . . . [Pisa's] motion for a new trial [in his own case] until such time as he came forth without any promises being made to him and testified truthfully and completely" in this case. The judge properly charged this jury that, in weighing

_____

[8] It may well have been thought necessary to protect Pisa from the serious risk of other inmates' resentment of his cooperation with the Commonwealth had he been returned to confinement. A transcript of the hearing concerning Pisa's release from custody on March 13 was ordered to be furnished to defense trial counsel on May 31, 1984.

credibility, they might "evaluate . . . considerations" such as whether "a witness . . . was cross-examined as to any promises, rewards, or inducements for that witness's testimony."[9]

The motives for Pisa's testimony at trial in July, 1984, should be judged as of that time even though the Commonwealth over five months later on January 3, 1985, ceased to oppose (as it had before Paradiso's trial) Pisa's motion for a new trial in his own case in Middlesex county.[10] Obviously the facts concerning the 1985 change of position in Pisa's case could not have been known to the trial judge in July, 1984. The trial judge could determine reasonably that this 1985 disposition made in Pisa's case, based on varied considerations, did not provide any reason for granting a new trial to Paradiso.

4. Paradiso's new counsel also contends that affidavits filed by him required that a new trial be granted. The trial judge could consider properly that one of them contained matter that could have been shown at trial; that one affidavit was by the operator of the East Boston bar who was actually present at trial but not called as a witness; that one affiant (also not called as a witness at trial) charged a witness at trial with discrepancies in her pretrial statements, a charge which the affiant had made

---

[9] Cross-examination went fully into the motives and discussions which caused Pisa to be willing to testify. Pisa's conversations with agents of the Commonwealth were brought out, not only through his testimony, but also through testimony of members of the Middlesex and Suffolk district attorney's offices with whom Pisa had spoken. There was evidence that Pisa was unwilling to testify unless precautions were taken to ensure that his family would be protected as well as himself. See note 8, supra.

There was no such lack of reliability in Pisa's (or in Bond's) testimony as should lead to exclusion of their testimony. See and compare United States v. Dailey, 759 F.2d 192, 196-201 (1st Cir. 1985).

[10] At the renewed hearing in 1985 on Pisa's motion it was pointed out that Pisa had passed a polygraph test which indicated that he had not been the person who had actually shot the security guard for whose murder he had been convicted as a joint venturer, whereas another person also charged with that murder had not passed such a polygraph test; that Pisa was nearly eligible for parole after confinement for over fourteen years; that he appeared to have been an exemplary prisoner, to have been rehabilitated, and to have held a job after his release from actual custody; and that he had been cooperative in this case and another case. He was granted a new trial, allowed to plead guilty to manslaughter, and given a sentence of time served.

known seasonably to Paradiso's trial counsel; and that all the affidavits were vague and some were based, in part at least, upon hearsay.

It should be noted also that the trial judge found "no substance to the allegation . . . [Paradiso] had ineffective assistance of counsel." The judge stated that Paradiso "was not deprived in any way of a substantial defense, his main defense being that someone else" murdered the victim. See discussion of comparable affidavits in *Commonwealth* v. *Cassesso,* 360 Mass. 570, 575-579 (1971), vacated (so far as it left death penalty remaining in force) sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972), and *Commonwealth* v. *Stewart,* 383 Mass. 253, 254, 257-260 (1981).

> *Judgments affirmed.*
>
> *Orders denying motions for a new trial and for reconsideration affirmed.*