COMMONWEALTH *vs.* OMAR T. WILLIAMS.

No. 97-P-1250.

Plymouth. December 18, 1998. - May 7, 1999.

Present: KASS, DREBEN, & SPINA, JJ.

*Evidence,* State of mind, Relevancy and materiality. *Self-Defense. Practice, Criminal,* Duplicative convictions.

At the trial of indictments for assault with intent to kill, assault and battery, and home invasion, evidence of the victims' fear of the defendant was properly admitted, where the defendant's claim of self-defense raised the issue of the victims' state of mind. [702-704]

INDICTMENTS found and returned in the Superior Court Department on November 7, 1995.

The cases were tried before *John A. Tierney*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The primary issue before us is whether the admission in evidence, over objection, that the alleged victims were in fear of the defendant was prejudicial error requiring reversal of the defendant's convictions of assault with intent to kill Henry Garcia, assault and battery on Henry by means of a dangerous weapon, and home invasion.[1] We affirm the convictions.

The prosecution's evidence, elicited mainly from Carlos Garcia, was as follows. Carlos and his brother Henry lived together at 6 West Park Street in Brockton. They, the defendant, and several others who lived nearby at 4 West Park Street had been

---

[1]The defendant was also charged with armed assault with intent to murder Carlos Garcia and assault by means of a dangerous weapon against Carlos, but was acquitted of those charges.

involved in selling drugs. On Friday, July 29, 1994, in consequence of a telephone call, Carlos went to a hospital where he found his brother Henry with a "slice" on his cheek. When asked where they went after Henry was discharged, Carlos answered, "We stayed at different motels — we were — we were hiding out." Defense counsel objected to the next question which was "Why were you hiding?" but was overruled. Carlos answered, "Because in fear of any — in fear for our lives." The prosecutor then asked:

*Q:* "From?"

*A:* "From Omar Williams and the rest of the — the people who were there at 6 West Park."[2]

The brothers remained in hiding for four or five days, but during the weekend they spoke to the police. On Monday they returned to 6 West Park Street, at which time Henry identified Richard Reyes who was then arrested.[3] The brothers retrieved some clothes from their apartment and went to another motel. The next day, Tuesday, August 2, 1994, they returned to their apartment to gather the rest of their belongings. Shortly after their arrival, Carlos heard glass breaking and saw Henry and the defendant arguing and fighting. The defendant was very hostile and called Carlos "a snitch, . . . . a rat, a fink, bitch ass nigger." After more words were exchanged, the defendant grabbed Carlos by a chain around his neck, and Carlos punched him in the face. The defendant staggered backwards, and went down the stairs. The brothers returned to their apartment to finish packing.

Ten minutes later, Carlos heard a knock and opened the door to face the defendant who was holding a gun aimed at Carlos, two or three inches from his head. Carlos ducked, the defendant fired but missed, and then proceeded to the bedroom. On seeing Henry, the defendant snarled, "I was sent to kill you bitch ass niggers." There was a second shot and Henry was hit in the leg.

Thereafter a warrant issued for the defendant but he was not

---

[2] When asked, "The names being?" Carlos answered, "Ansell Gilchrist, Richard Blake and Richard Reyes."

[3] A police officer testified that he went to 6 West Park Street on Friday in response to a call about gunshots and returned on Monday to investigate a home invasion. Three persons were arrested, Ansell Gilchrist, Richard Blake, and Richard Reyes. The grounds for the arrests do not appear in the record. See note 2, *supra.* When the defendant took the stand he acknowledged that he was present at the time his friends were arrested, but claimed he did not know the Garcia brothers were helping the police.

found until October, 1995. A police officer, who had spoken to him at the Brockton District Court, testified that the defendant had told him that he and Carlos had fought and that Henry had shot at him on a prior date.

The defendant took the stand and gave an account that differed from Carlos's. He testified that he and Henry had been partners in the selling of crack cocaine but had a falling out. On August 2, 1994, he had several arguments with Carlos at 6 West Park Street, and Carlos said he was going to kill him. At one point when the defendant was on the first floor, he heard a noise and went upstairs. When Henry tried to grab him, the defendant pushed him and Henry fell through the porch door and "a whole bunch of glass broke." Carlos joined them and the three began to fight. The brothers subsequently pushed the defendant into their apartment, and while they were fighting, Carlos pulled a gun. The defendant also had a gun. When Henry came toward him, he was frightened, pointed the gun at the floor, and just shot. The defendant ran out of the apartment without paying attention to anything.

1. *Carlos's fear of the defendant.* The admissibility of statements by a victim that he or she feared the defendant arises most frequently in situations where the victim is dead and can no longer be questioned. Evidence as to the decedent's fear of the defendant is admissible only if relevant to a material issue in the case. Compare *Commonwealth* v. *Gilbert,* 366 Mass. 18, 28 (1974); *Commonwealth* v. *Magraw,* 426 Mass. 589, 596 (1998), and *Commonwealth* v. *Squailia,* 429 Mass. 101, 106 (1999), cases where the evidence was held to be relevant, with *Commonwealth* v. *DelValle,* 351 Mass. 489, 492-493 (1966) (threats made by defendant recounted by decedent), *S.C.,* 353 Mass. 684 (1968); *Commonwealth* v. *Cyr,* 425 Mass. 89, 93-94 (1997); *Commonwealth* v. *Qualls,* 425 Mass. 163, 169-170 (1997); *Commonwealth* v. *Jenner,* 426 Mass. 163, 165 (1997), and *Commonwealth* v. *Bond,* 17 Mass. App. Ct. 396, 398-400 (1984), cases where the evidence was determined not to be material and should have been excluded.

Unlike the homicide cases, neither hearsay[4] nor confrontation is an issue here as Carlos was available for cross-examination.

---

[4]The defendant's contention that, since Carlos could only be in fear because of what Henry told him, the statement is hearsay, is without merit. Carlos's testimony as to his own fear, whatever its genesis, is not an extrajudicial statement.

The issue of relevance, however, remains. When fear by the victim or threats by the defendant are in issue, a strict requirement of relevance is imposed based on the highly prejudicial nature of such evidence. There is a danger of its being misused by a jury "as somehow reflecting on the defendant's state of mind rather than that of the victim." *Commonwealth* v. *Qualls*, 425 Mass. at 169. *Commonwealth* v. *Bond*, 17 Mass. App. Ct. at 399. See McCormick, Evidence § 276, at 243 (4th ed. 1992). In cases of homicide or assault with intent to murder, such statements, if used by the jury for this improper purpose, may be "virtually dispositive of the case." *United States* v. *Brown*, 490 F.2d 758, 764 (D.C. Cir. 1974). As pointed out in *Commonwealth* v. *DelValle*, 351 Mass. at 492-493, the evidence "fulfilled the broad purpose of proving that threats on the deceased's life were made by the defendants, and the jury were left to infer from this that the defendants desired his death and, in fact, accomplished it." Or, as stated in *United States* v. *Brown*, 490 F.2d at 779, and quoted in *Commonwealth* v. *Qualls*, 425 Mass. at 172-173, "To the jury it must have been as simple as this: [the victim] feared being killed by [the defendant], and sure enough [the victim] was killed. Therefore, odds are good that it was done by [the defendant]."

While the cases establish that the victim's fear of the defendant "sheds no light" on the defendant's motive, see, e.g., *Commonwealth* v. *Qualls*, 425 Mass. at 169; *Commonwealth* v. *Jenner*, 426 Mass. at 165; *Commonwealth* v. *Magraw*, 426 Mass. at 594, evidence of such fear is relevant in some circumstances. Thus in *Commonwealth* v. *Gilbert*, 366 Mass. at 28, where the victim's body was found at sea beyond the three mile jurisdictional limit, the fear of the deceased was relevant to show that the defendant had killed her on shore and thus within the territorial limits of Massachusetts. The victim's "expressed fear of the defendant supports the inference that she would not have gone on the boat voluntarily." *Id.* at 30.

Similarly in *Commonwealth* v. *Magraw*, 426 Mass. at 593-596, where the defendant contended that he and the victim got along well and that she had agreed to meet him alone in her house, considerable evidence of the victim's fear was held admissible to rebut those contentions. "[T]he probative value of understanding the victim's state of mind with respect to whether she would have voluntarily met with the defendant in her home outweighed any prejudice these statements may have had on the defendant's case." *Id.* at 595.

As the Supreme Judicial Court more generally stated, *id.* at 594: "A murder victim's state of mind becomes a material issue if the defendant opens the door by claiming that the death was a suicide or a result of self-defense, [or] that the victim would voluntarily meet with or go someplace with the defendant, or that the defendant was on friendly terms with the victim."

In the case at bar, the defendant claimed self-defense, and, rather than being guilty of home invasion, claimed that he was pushed into the apartment by the Garcia brothers when the three of them were fighting in the hall. The evidence that the brothers were afraid that the defendant would kill them was material to rebut that claim.[5] Their fear of the defendant supports the inference that they would not have voluntarily shoved him into their apartment. Moreover, the direct evidence of Carlos's fear was unlikely to be prejudicial because its existence was readily inferable from the evidence that Henry had a "slice" on his cheek, that the defendant's cohorts were arrested because of Henry's identifying one of them, and that the brothers were in hiding and stayed in motels rather than going to their apartment. See *Commonwealth* v. *Arce*, 426 Mass. 601, 603 (1998).

*2. Duplicative sentences.* The defendant's contention that his conviction of assault with intent to kill and his conviction of assault and battery by means of a dangerous weapon are duplicative and that he cannot be sentenced for both crimes is refuted by *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382 (1998).

*Judgments affirmed.*

---

[5]Although it is not clear from the record that the prosecution knew that the defendant would claim self-defense and, hence, the evidence may have been more suitable for rebuttal, we perceive no prejudice in the sequence in which the evidence was introduced. See *Commonwealth* v. *Saarela*, 376 Mass. 720, 722, 723-724 (1978).